EPSTEIN, BECKER & GREEN,
Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

and

Ethel Johnson, Intervenor.

No. 01–AA–1139.

District of Columbia Court of Appeals.

Argued Oct. 2, 2002.

Decided Dec. 19, 2002.

Bonnie J. Brownell, Washington, DC, for petitioner.

George E. Swegman, Washington, DC, for intervenor.

Before RUIZ, REID, and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

Epstein, Becker, and Green, (hereinafter "Epstein") a large law firm and former employer of Ms. Ethel Johnson, petitions for review of a decision by the Director of the Department of Employment Services (DOES). The Director reversed a hearing examiner's suspension of Ms. Johnson's temporary full worker's compensation benefits. The hearing examiner found that Ms. Johnson unreasonably failed to cooperate with vocational rehabilitation services offered to her by Epstein. The Director, however, concluded that Johnson could not have failed to cooperate because the vocational rehabilitation counselor assigned to her had discontinued working on her case and closed the file. Therefore, according to the Director, there were no services being offered to Johnson for which she could fail to cooperate. We find that this conclusion is not based on substantial evidence in the record and, therefore, reverse and remand the case to the Director for further consideration consistent with this opinion.

## I.

Johnson worked for Epstein as a receptionist and communication specialist. In 1997 Johnson was diagnosed with bilateral carpal tunnel syndrome and was unable to continue her employment with Epstein. She was awarded temporary total disability benefits on February 17, 1999. In July 1999 Epstein hired a vocational rehabilitation counselor, Mr. Edward Robinson, to help Johnson find suitable alternative employment that would comply with limitations resulting from the carpal tunnel syndrome. From July to October 1999, Mr. Robinson attempted to meet with Johnson and her attorney to commence vocational rehabilitative services. The meeting was delayed, however, until Johnson's attorney had an opportunity to communicate with Epstein's attorney and later return from out of town. On October 12, 1999, Johnson, her attorney and Robinson finally met. At this meeting, Robinson requested that Johnson sign a medical release form, so he could verify her current medical condition. The form was not signed initially because Johnson's attorney considered it overly broad and objected to a grammatical error in the form. Robinson made corrections to the form and sent them to Johnson's attorney one week after the October 12th meeting. On October 21, 1999, Robinson contacted Johnson, who indicated that she had sent the form to her attorney.[1] From November 20, 1999 until December 3, 1999, Robinson tried unsuccessfully, through phone calls and letters, to get either Johnson or her attorney to return the medical authorization form. Because the form was never returned, Robinson felt he was unable to provide the vocational rehabilitation services requested by Epstein and decided on December 3, 1999 to discontinue working on the matter.[2] He did, however, make two more calls to Ms. Johnson's attorney before deciding on January 31, 2000 to suspend his efforts to access Johnson's impairment.

Subsequently, Epstein requested modification of the compensation order granting Ms. Johnson temporary full worker's compensation benefits, claiming a change in Johnson's physical and economic conditions. Epstein argued that Johnson had a change of economic condition because she voluntarily limited her income by refusing to cooperate with the vocational rehabilitation counselor. On December 12, 2000, an evidentiary hearing was held and the hearing examiner found no change in Johnson's physical condition, but agreed with Epstein that Johnson had failed to cooperate with the vocational rehabilitation counselor. The examiner, therefore, suspended Johnson's benefits as of December 3, 1999.

Johnson appealed the hearing examiner's decision to the Director of DOES. The Director reversed the hearing examiner's ruling, finding that because Johnson's file was placed on inactive status as of December 3, 1999, Johnson could not have failed to cooperate with the vocational rehabilitation counselor.

## II.

■ This court reviews decisions of the DOES based on the substantial evidence standard. We must affirm if the Director's factual determinations are based on substantial evidence. Substantial evidence is "more than a mere scintilla" *Clark v. District of Columbia Dep't of Employment Servs.*, 772 A.2d 198, 201 (D.C.2001) (internal quotation marks and

---

1. Apparently there was no contact between Robinson and Johnson or her attorney between October 22 and November 20, 1999.

2. This court was advised during oral arguments that the parties were in settlement discussions during some or all of this period.

citations omitted). It is "relevant evidence such as a reasonable mind might accept as adequate to support a conclusion." *Black v. District of Columbia Dep't of Employment Servs.*, 801 A.2d 983, 985 (D.C.2002) (citations omitted).

While acknowledging that the issue before the hearing examiner was whether the claimant had failed to cooperate with vocational rehabilitation, the Director stated in his order that "[t]he sole issue in this case is whether Claimant unreasonably failed to cooperate with vocational rehabilitation when [the] Employer no longer offered a vocational rehabilitation program." The Director concluded that a claimant cannot fail to cooperate if there are no vocational rehabilitation services being offered. He also found that because his ruling was based on the absence of vocational rehabilitation services at the time Johnson's benefits were suspended, it was unnecessary to address the other arguments made by either Johnson or Epstein.

In her brief, the claimant concurs with the Director's conclusion that she could not have failed to cooperate as of December 3, 1999 based on D.C.Code § 32–1507(d) (2001) (formerly § 36–307 (1981)). The statute provides:

> If at any time during such period the employee unreasonably refuses to ... accept vocational rehabilitation the Mayor shall, by order, suspend the payment of further compensation, medical payments, and health insurance coverage *during such period,* unless the circumstances justified the refusal.

Section 32–1507(d) (emphasis added). The claimant argues that the Director's decision was correct because the benefits were not suspended "during such period" that the vocational rehabilitation specialist was being offered to her, rather the benefits were suspended *after* Mr. Robinson had placed Johnson's file on inactive status.

Furthermore, the claimant argues that she did not receive notice that her actions constituted a failure to cooperate with rehabilitative services. Therefore, she was denied an opportunity to cure the deficiency.

The Director cites to a prior Director's ruling, *Massey v. Sterling Textile Serv. and CNA Ins. Co.*, Dir. Dkt. 98–72 (January 14, 1999), to support his position that when a vocational rehabilitation file is closed, a claimant cannot unreasonably fail to cooperate with the rehabilitation services. While we do not disagree with the logic of *Massey,* that case is distinguishable from the present case for two reasons: (1) the reason the file was "closed" is different and (2) the effect of "closing" the file was different. In *Massey,* the file was closed based on a "predetermined cessation date" established between the employer and the vocational rehabilitation provider. *Massey,* Dir. Dkt. 98–72, at 3. The employer had a sixty-day contract with the vocational rehabilitation provider that expired within the period that the employer requested a suspension of benefits. *Id.* The Director, in *Massey,* therefore, found that "the termination of rehabilitation efforts was not related to claimant's actions, but was planned in advance by employer." *Id.* In the present case, the rehabilitation counselor closed the file due to the claimant's failure to cooperate. Mr. Robinson testified during the December 12, 2000 hearing "it was my recommendation that the file be closed or be diaried *until such time* that we could get the medical information or get the medical authorization."[emphasis added].

Furthermore, in the present case, there is no evidence that closing the file meant that the vocational rehabilitation program was permanently unavailable. To the contrary, the counselor testified that he closed the file merely *until* Johnson cooperated with vocational rehabilitation efforts.

Again, in *Massey,* however, not only was the file closed, but the program had come to an end. Therefore, unlike the situation in the present case, there was evidence to support the Director's decision in *Massey* that the claimant could not fail to cooperate once the *program* had actually terminated.

Because there is not substantial evidence in the record to support the Director's conclusion that the file was closed in the present case, in the sense that the claimant was left without access to vocational rehabilitation services, the case must be reversed and remanded for further consideration consistent with this opinion. On remand, the Director should consider the other arguments raised by the claimant, including: (1) that she did not unreasonable fail to cooperate with the employer's offered vocational rehabilitation services and (2) because she was not given notice that her actions constituted a failure to cooperate, she was improperly denied an opportunity to cure, contrary to the rehabilitative intent of D.C.Code § 32–1507(d).

*Reversed and remanded.*