POTOMAC ELECTRIC POWER
COMPANY, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.

Richard V. Drake, Intervenor.

No. 02–AA–1325.

District of Columbia Court of Appeals.

Argued Oct. 16, 2003.

Decided Nov. 13, 2003.

Kevin J. O'Connell, Rockville, MD, for petitioner.

Arabella W. Teal, Interim Corporation Counsel at the time the Statement was filed, and Charles L. Reischel, Deputy Corporation Counsel at the time the Statement was filed, filed a Statement in Lieu of Brief, for respondent.

Benjamin T. Boscolo, Greenbelt, MD, for intervenor.

Before SCHWELB and WASHINGTON, Associate Judges, and PRYOR, Senior Judge.

SCHWELB, Associate Judge:

Reversing a ruling in favor of the employer by an Administrative Law Judge (ALJ) of the District of Columbia Department of Employment Services (DCDOES), and concluding that the medical opinion of Joel Fechter, M.D., an orthopedist retained by claimant Richard Drake's counsel, was uncontradicted while the assessment by Michael Joly, M.D. the treating physician, was erroneous as a matter of law, the agency's Director awarded Drake permanent partial disability benefits based on an impairment rating of 32% to the "left lower extremity." Drake's employer, Potomac Electric Power Company (PEPCO), has asked this court to review the Director's decision. PEPCO contends, *inter alia*, that the Director erred in treating Dr. Fechter's assessment as uncontradicted and in basing his decision on a medical opinion which the ALJ, as trier of fact, had explicitly rejected. We agree with PEPCO and conclude, for these reasons, that the Director's decision is not supported by substantial evidence. Accordingly, we reverse.

## I.

On July 7, 1999, Drake, a mechanic and cable splicer for PEPCO, sustained a fractured left ankle when he stepped out of his truck while at work. For several weeks, Drake's leg was in a cast. In August 1999, while still on crutches, Drake returned to work on light duty. In November 1999, Drake resumed his full-time duties. He received full pay and was able to work overtime, but continued to suffer pain or discomfort in his left ankle. Drake sought a permanent partial disability compensation award pursuant to D.C.Code § 32–

1508(3)(B) (2001), based upon a 32% impairment as assessed by Dr. Fechter.

On November 16, 2000, an evidentiary hearing was held before the ALJ. Drake was the only live witness, and the remaining evidence was presented in documentary form. On May 9, 2002, the ALJ issued a Compensation Order in which he "accept[ed] the opinion of the treating physician [Dr. Joly] and [found] that the claimant has a five percent permanent partial disability of the body as a whole." [1] The ALJ wrote that Dr. Joly was in a superior position to evaluate Drake's injury because he had examined Drake at a time close to the date of the accident and because he had monitored Drake's progress and rehabilitation. The ALJ further wrote that

> [i]n reaching a determination of the nature and extent of the claimant's disability, and "in assessing the weight of competing medical testimony in worker compensation cases, attending physicians are ordinarily preferred as witnesses to doctors who have been retained to examine the claimant solely for purposes of litigation." *Stewart v. [District of Columbia Dep't of Employment Servs.]*, 606 A.2d 1350, 1353 (D.C.1992).

By contrast, the ALJ was unpersuaded by the evaluation of Drake's injury proposed by Dr. Fechter:

> ... I reject the medical opinions and disability rating assessed by claimant's IME physician, Dr. Fechter. He did not see the claimant to render any treatment or for any purpose other than arriving at a disability rating related to his workers' compensation claim. Addition-

ally, his disability ratings are based upon a single examination of the claimant, a review of his treatment records, and x-rays. Therefore, not having the benefit of having examined the claimant during the time he was experiencing significant symptoms related to the work injury, as did the treating physician, I find the IME's medical opinions of the degree of the claimant's permanent impairment from the July 7, 1999 work injury not as reliable or persuasive as those expressed by the treating physician.

Drake filed a timely administrative appeal from the Compensation Order. On October 30, 2002, the Director reversed the ALJ's decision, holding that the ALJ erred by accepting the treating physician's opinion and by "finding that claimant does not have a thirty-two percent permanent partial disability of the left lower extremity." According to the Director, no special weight should have been accorded to Dr. Joly's opinions, because "the treating physician did not address the issue presented of whether claimant sustained an injury of the left leg." Moreover, in the Director's view

> [t]he ALJ's award based on a rating of the body as a whole for a schedule loss, is erroneous as a matter of law. The statute does not provide for a schedule award to the body as a whole. *See Scott v. Washington Hospital Center,* Dir. Dkt. No. 98–31 (March 29, 2000).

Finally, in a sentence that we find quite remarkable in light of the ALJ's findings

---

1. The ALJ's conclusion was based on the following assessment by Dr. Joly:

   Based on the American Medical Association's Guides to the Evaluation of Permanent Impairment, Fourth Edition, and based on Maryland Worker's Compensation Criteria of pain, weakness, atrophy, loss of endurance and loss of function, I assign this

   patient a total of five (5) percent whole person impairment including zero (0) percent for AMA Guides and five (5) percent for residual pain in the anterior lateral aspect of the left ankle with increased activity. There is no atrophy, weakness, decreased endurance or decrease in function.

and the evidence on which they were based, the Director wrote that

> [t]he *uncontradicted evidence of record* establishes that claimant has a 32% permanent partial disability of the left leg. (*See* Medical Report of Dr. Fechter, dated February 8, 2000).

PEPCO filed a timely petition for review.

## II.

■ We must uphold the Director's decision if it is in accordance with the law and supported by substantial evidence. *See* D.C.Code §§ 2–501, –510 (2001); *United Parcel Serv. v. District of Columbia Dep't of Employment Servs.*, No. 02–AA–1288, slip op. at 5 (D.C. Oct.24, 2003). "Evidence is substantial when a reasonable mind might accept it as adequate to support a conclusion." *Belcon, Inc. v. District of Columbia Water & Sewer Auth.*, 826 A.2d 380, 384 (D.C.2003) (quoting *Epstein, Becker & Green v. District of Columbia Dep't of Employment Servs.*, 812 A.2d 901, 903 (D.C.2002)) (internal quotation marks and brackets omitted). The corollary of this proposition is that if the Director's findings are *not* supported by substantial evidence, they cannot be sustained, and we are required to set them aside. *Jadallah v. District of Columbia Dep't of Employment Servs.*, 476 A.2d 671, 676 (D.C.1984).

■ Further, the Director "is bound by the [ALJ's] findings of fact if those findings were supported by substantial evidence in the record, considered as a whole." *Pickrel v. District of Columbia Dep't of Employment Servs.*, 760 A.2d 199, 203 (D.C.2000). Indeed, the Director must defer to the ALJ even if, had he been the trier of fact, he might have reached a contrary result based on an independent review of the record. *Id.* "[T]he ALJ's findings of fact are binding at all subsequent levels of review unless they are unsupported by substantial evidence, and this is true even if the record contains substantial evidence to the contrary." *Raphael v. Okyiri*, 740 A.2d 935, 945 (D.C.1999) (citation omitted). This court, too, must therefore defer to the ALJ's findings.

■ In this case, in our view, the Director's decision rests on two demonstrably erroneous factual assertions, one with regard to Dr. Fechter's analysis and the second with respect to Dr. Joly's report. In light of these critical errors, the decision is not supported by substantial evidence.

According to the Director, the "uncontradicted evidence of record" established that Drake had a 32% permanent partial disability of the left leg. The only stated (or conceivable) basis for this assertion is Dr. Fechter's report. But the Director was not free to rely on Dr. Fechter's medical opinions, for those opinions had been expressly rejected by the trier of fact. The ALJ could hardly have been more emphatic: "I reject the medical opinions and disability rating assessed by claimant's IME physician, Dr. Fechter." Moreover, although he was not required to do so, the ALJ gave ample reasons for rejecting Dr. Fechter's conclusions, pointing out that Drake had been examined by Dr. Fechter, on his counsel's advice, solely for litigation purposes rather than for treatment. The ALJ also noted that Dr. Fechter had examined Drake only once, and not at all while Drake was experiencing symptoms or recovering from the injury. See page 3, *supra*. The Director would not have been justified in basing his decision on a report that had been discredited by the ALJ even if (as the Director appeared to believe) that report had been uncontradicted, which it was not.[2]

---

2. Aside from the difference of opinion be-

tween Dr. Joly and Dr. Fechter on the disposi-

■ The Director's finding that Dr. Joly "did not address the issue ... whether claimant suffered an injury of the left leg" likewise lacks evidentiary support. The passage from Dr. Joly's report quoted in footnote 1, *supra*, reflects that the treating physician did indeed discuss the injury to Drake's left leg. He found that Drake was still afflicted with "residual pain in the anterior lateral aspect of the left ankle with increased activity," but suffered no atrophy, weakness, decreased endurance or decrease in function. Dr. Joly wrote that no award was appropriate under the AMA Guides (dealing with permanent injury to limbs pursuant to the schedule set forth in D.C.Code § 32–1508(3) (2001)); he concluded instead that Drake suffered a "whole person" impairment of 5%. Our workers' compensation statute makes no provision for "schedule" awards for "whole person" injuries. *See* D.C.Code § 32–1508.

■ The problem with Dr. Joly's opinion, from Drake's perspective, is that the statute defines "disability" as "physical or mental incapacity because of injury *which results in the loss of wages.*" D.C.Code § 32–1501(8) (emphasis added). "Disability is an economic and not a medical concept." *Harris v. District of Columbia Dep't of Employment Servs.*, 746 A.2d 297, 301 (D.C.2000) *(quoting Washington Post v. District of Columbia Dep't of Employment Servs.*, 675 A.2d 37, 40 (D.C. 1996)). In general, except in the case of a "schedule" injury enumerated in the statute, including, *inter alia*, the loss of an arm, leg, hand, foot, eye, finger, or toe, *see* D.C.Code § 32–1508(3)(A) through (U), "a continuing injury that does not result in

any loss of wage earning capacity cannot be the foundation for a finding of disability." *American Mut. Ins. Co. v. Jones*, 138 U.S.App. D.C. 269, 271–72 & n. 9, 426 F.2d 1263, 1265–66 & n. 9 (1970).

In his Compensation Order, the ALJ quoted from the decision of the Director in *McDermott v. Milestone Indus.*, Dir. Dkt. No. 89–2, H & AS No. 88–616, OWC No. 0092810 (Sep. 14, 1989), as follows:

> Under D.C.Code § [32–1508] there are two methods prescribed for computing the compensation benefits due to an employee who suffers a permanent partial disability. If an employee suffers an injury listed in D.C.Code § [32–1508](3)(A)–(U), the employee receives 66⅔ per cent of his or her average weekly wage for a specified number of weeks. Impairment to the body as a whole is not included on this listing. Accordingly, ... [where] the claimant's injury does not comply with any specific identifiable member or organ of the body listed in § [32–1508](3)(A) of the D.C.Code, the award [should be determined] under the provisions of § [32–1508](3)(V) which govern permanent partial disability resulting in wage loss (i.e. the difference between the claimant's average weekly wage before becoming disabled and his actual wages after becoming disabled).

In our view, the decision in *McDermott* correctly summarizes the statutory scheme.

We take no position with respect to the issue, raised during oral argument, whether, in light of Dr. Joly's finding that Drake

tive issue, namely, whether Drake had proved that he had a 32% partial permanent disability to the left leg, the two physicians differed with respect to other issues as well, *e.g.*, whether Drake suffered a "displaced fracture," as Dr. Fechter ultimately claimed, or a

non-displaced fracture, as Dr. Joly found. Dr. Fechter also found "atrophy" which is compensable under the statute, D.C.Code § 32–1508(3)(U-i) (2001); Dr. Joly found none.

suffered injury to his leg, the 5% "whole person" impairment may or should be translated, consistently with the authorities cited, and notwithstanding the lack of proof of wage loss, into any compensable impairment of the left leg.[3] That determination must be made, at least initially, by the agency. We conclude only, as a matter of law, that in light of the errors identified in this opinion, the Director's disposition of this case is not supported by substantial evidence. Accordingly, the Director's decision is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

**3.** As the ALJ stated in a footnote to the Compensation Order, "[t]he employer interpreted Dr. Joly's permanent partial disability rating as being assessed to the left lower extremity and voluntarily paid the claimant disability compensation benefits consistent with that rating."