**EPSTEIN, BECKER, AND GREEN, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**Ethel Johnson, Intervenor.**

No. 03–AA–183.

District of Columbia Court of Appeals.

Argued April 28, 2004.
Decided May 27, 2004.

Sarah O. Rollman, Silver Spring, MD, for petitioner.

Mary T. Connelly, Assistant Corporation Counsel, with whom Robert J. Spagnoletti, Corporation Counsel, and Edward E. Schwab, Acting Deputy Corporation Counsel at the time, were on the brief, for respondent.

Before SCHWELB, FARRELL, and RUIZ, Associate Judges.

FARRELL, Associate Judge:

For the second time in this case, we are obliged to reverse a decision of the Director of the District of Columbia Department of Employment Services (DOES) and remand for further proceedings. The issue before the agency and this court throughout has been whether intervenor, Ethel Johnson, a recipient of workers' compensation benefits, unreasonably failed to cooperate with vocational rehabilitation services offered by her employer (hereafter Epstein). *See* D.C.Code § 32–1507(d) (2001). In the latest decision on remand, the Director adopted and applied a requirement of notice and opportunity to cure not expressed in any statute or existing regulation, or foreshadowed in any prior decision of the Director (at least none cited to us in this case). We hold that application of this requirement to Epstein denied it basic procedural fairness. We remand for determination of the remaining—and dispositive—issue of whether Johnson unreasonably refused to accept vocational rehabilitation within the meaning of § 32–1507(d).

## I.

The facts related to Johnson's award of compensation are summarized in *Epstein, Becker & Green v. District of Columbia Dep't of Employment Servs.*, 812 A.2d 901, 902 (D.C.2002) (*Epstein I*). Epstein originally moved to suspend Johnson's receipt of benefits on the ground primarily that she had failed to cooperate in the process of securing suitable alternative employment. A DOES hearing examiner agreed with Epstein.[1] The Director reversed that decision, concluding that Johnson had not failed to cooperate because the vocational rehabilitation counselor had discontinued working on her case and instead closed the file, thereby precluding her cooperation. *Id.* This court in turn reversed, holding that "there [was] not substantial evidence in the record ... that the file was closed in the present case, in the sense that the claimant was left without access to vocational rehabilitation services," *id.* at 904; rather, evidence showed that the counselor had "closed the file merely *until* Johnson cooperated with vocational rehabilitation efforts." *Id.* at 903. We remanded the case for consideration by the Director of the other arguments made by Johnson, including:

(1) that she did not unreasonabl[y] fail to cooperate with the employer's offered vocational rehabilitation services and (2) [that] because she was not given notice that her actions constituted a failure to cooperate, she was improperly denied an opportunity to cure, contrary to the rehabilitative intent of D.C.Code § 32–1507(d).

*Id.* at 904.

On remand, the Director agreed with Johnson on the second issue. He found "no evidence" that "either before or after [vocational rehabilitation] services were terminated by [the e]mployer, ... she was notified [of the employer's opinion that she was failing to cooperate with rehabilitation] and given the opportunity to cure the

---

1. The examiner based this finding chiefly on the refusal of Johnson and her lawyer to provide the vocational rehabilitation counsel-

or with a medical authorization necessary to determine what types of work activities she could safely perform.

alleged failure"; and he determined that without that opportunity she was denied the means "to satisfy her obligations under the Act to cooperate with vocational rehabilitation." Without "notice and the opportunity to cure any alleged deficiency," the Director reasoned,

> [c]laimant was punished without being informed, in any manner, that she was perceived to be defiant. The Director does not believe that such an approach satisfies the spirit and strong humanitarian purpose of the Act. *See Hensley v. Washington Metropolitan Area Transit Authority,* [210 U.S.App. D.C. 151, 154–55,] 655 F.2d 264, 267–68 (1981). Moreover, suspending benefits without notice would seem to be contrary to the rehabilitative intent of the vocational rehabilitation provisions of the Act.

Epstein filed this petition for review, arguing that the Director's retroactive application to this case of a novel "notice and opportunity to cure" requirement denied it basic procedural fairness.

## II.

D.C.Code § 32–1507 imposes reciprocal obligations on an employer and an employee in respect to vocational rehabilitation. Sections 32–1507(a) & (c) require the employer to furnish vocational rehabilitation services "designed, within reason, to return the employee to employment at a wage as close as possible to the wage that the employee earned at the time of injury." Conversely, § 32–1507(d) provides that "[i]f at any time [while receiving worker's compensation] the employee unreasonably refuses to . . . accept vocational rehabilitation[,] the Mayor shall . . . suspend the payment of further compensation . . . during such period, unless the circumstances

justified the refusal." An employer requesting suspension of payment on this ground does so by filing a motion under D.C.Code § 32–1524 to modify the compensation award based on "a change of conditions," which, in this case, would be the failure to cooperate. Any such motion, of course, must be accompanied by notice to the employee. *See generally* 7 DCMR § 210.2 *et seq.* (1986) ("Notice of Controversion").

Epstein contends that it followed these procedures in disputing Johnson's cooperation with vocational rehabilitation, and that this provided Johnson all the notice and opportunity to contest the suspension of benefits that the law at the time required. Nevertheless, Epstein asserts, the Director has chosen this case to adopt and apply a rule not reflected or anticipated in any of his prior decisions requiring employers to give prior notice and an opportunity to cure before they may request suspension of benefits based on failure to cooperate with vocational rehabilitation. Epstein contends that, by applying that rule to this case, the Director substituted a requirement of which Epstein had no knowledge for the statutory inquiry—which the Director avoided—into whether Johnson had unreasonably failed to accept vocational rehabilitation. We find merit in this argument.[2]

Counsel for DOES reasons, to the contrary, that the Director did not adopt a broad requirement of notice and opportunity to cure; instead (says counsel) he determined on the facts of this case—*including* Epstein's failure to inform Johnson of its dissatisfaction with her cooperation—that substantial evidence did not support a finding of Johnson's refusal to

---

**2.** Although our remand in *Epstein I* instructed the Director to consider whether—as Johnson argued—there should be such a notice-and-

cure requirement, we expressed no opinion concerning the merits of such a rule or its application to Epstein.

accept vocational rehabilitation. This is not a faithful reading of the Director's decision. Although the Director acknowledged that findings by a hearing examiner must be affirmed if "supported by substantial evidence in the record[ ] considered as a whole," D.C.Code § 32–1522(b)(2), he did not discuss the evidence relied on by the examiner or furnished by the record in its entirety. Instead, he defined the issue on appeal strictly as whether Johnson's benefits could be retroactively suspended "without [Epstein] having first notified [Johnson] of her failure to cooperate ... and giving her the opportunity to cure the failure to cooperate." And his answer was to conclude that "there is no evidence ... that [Johnson] was notified [of her perceived failure to cooperate] and given the opportunity to cure [it]." What thus emerges from this ruling is a duty of employers in general to give notice and an opportunity to cure before they may apply for suspension of benefits based on failure to accept vocational rehabilitation.[3]

In adopting what amounts to a condition precedent to filing a motion to suspend benefits, the Director did not point to any provision of the Workers' Compensation Act or regulation as justifying the rule. Rather he viewed the condition as necessary to satisfy "the spirit and strong humanitarian purpose of the Act" and to further the statutory "intent to motivate cooperation by an alleged non-cooperating employee." Epstein does not ask us to decide whether that requirement comports with the Act or its underlying policy—we may assume that it does. The question

before us is whether it could fairly be applied to govern Epstein's conduct in this case.

■■■ "It is well settled that an agency may establish rules of general application in either a statutory rule-making procedure or an individual adjudication." *Washington Hosp. Ctr. v. District of Columbia Dep't of Employment Servs.*, 743 A.2d 1208, 1211 (D.C.1999).[4] A necessary corollary, however, is that "when a new rule is established through individual adjudication, due process requires that the agency 'provide notice which is reasonably calculated to inform all those whose legally protected interests may be affected by the new principle.'" *Id.* at 1212 (citation omitted); *see also* 1 KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 6.8, at 277 (3d ed. 1994) ("[D]ue process requires fair adjudication, and ... fair adjudication requires decisionmaking with reference to ascertainable standards of which the parties have adequate notice."). In this case, Epstein could not reasonably—one is tempted to say not possibly—have been aware that a condition of its filing for suspension of compensation benefits was notice to Johnson and an opportunity for her to cure the perceived non-cooperation. As Epstein points out, the requirement was not foreshadowed by any decision of the Director. Moreover, to anticipate it Epstein would have had to foresee the contours of a rule that even now—in the decision under review—the Director has not defined. For instance,

---

**3.** In response to questioning at oral argument, counsel for DOES could point only to cases of obvious futility as instances where, under the Director's rule, the employer would be relieved of the need to give notice and opportunity to cure.

**4.** At the same time, "[b]ecause an administrative agency usually has 'the ability to make

new law prospectively through the exercise of its rulemaking powers, it has less reason [than a court] to rely upon *ad hoc* adjudication to formulate new standards of conduct.'" *Reichley v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 244, 249 (D.C.1987) (citation omitted).

what form must the notice take? Is informal notice sufficient or must it be in writing? Must the notice specify the consequences of failure to cure? And how long must the cure period last? These and similar ambiguities—whatever they say about the wisdom of the Director's rule—demonstrate the unfairness of holding Epstein to a requirement it could not reasonably have foreseen and thereby denying it the statutory determination of whether Johnson cooperated with vocational rehabilitation.

The Director, accordingly, must make that determination rather than the abbreviated one he made. In assessing Johnson's cooperation, of course, the Director may consider whether Epstein's own ac-

tions (or inaction) may have led her to believe that her cooperation was not in question.[5] But what he may not do is short-circuit the inquiry solely by reference to a newly-fashioned requirement of notice and opportunity to cure.

The decision of the Director is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

---

**5.** The hearing examiner acknowledged, for example, that periods of time had elapsed when neither the vocational rehabilitation counselor nor Johnson's lawyer initiated fur-

ther communication. Our opinion in *Epstein I,* 812 A.2d at 902 n. 2, explained that during part of this time the parties were engaged in settlement discussions.