**Cassandra CALDWELL, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent,**

**Howard University Hospital, et al., Intervenors.**

**No. 06–AA–79.**

District of Columbia Court of Appeals.

Argued Oct. 31, 2006.

Decided Jan. 25, 2007.

Matthew Peffer, for petitioner.

Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General, filed a statement in lieu of brief, for respondent.

William H. Schladt, Gaithersburg, MD, for intervenors.

Before RUIZ and FISHER, Associate Judges, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

On September 30, 2005, an Administrative Law Judge (ALJ) of the District of Columbia Department of Employment Services (DC DOES) issued a Compensation Order awarding Cassandra Caldwell, a former employee of Howard University Hospital (HUH), workers' compensation benefits for medical problems and expenses resulting from Ms. Caldwell's contact with certain chemical agents while she was employed by HUH. The ALJ ruled, however, that Ms. Caldwell's condition, insofar as it related to her employment at HUH, had resolved on June 23, 2004, and that she therefore was not entitled to ben-

efits after that date. Ms. Caldwell appealed to the Compensation Review Board (CRB) of the agency's Office of Hearings and Adjudication (OHA), and on January 10, 2006, the CRB affirmed the ALJ's decision. Ms. Caldwell has now filed a petition for review in this court, contending that the ALJ's finding that her condition had resolved by June 23, 2004 was not supported by substantial evidence in the record and that the CRB erred in affirming that finding. Because there is no substantial evidence that as of June 23, 2004, Ms. Caldwell had fully recovered from *all* (as distinguished from most) of the medical problems resulting from her employment at HUH, we reverse the CRB's decision and remand for further proceedings.

## I.

Ms. Caldwell was employed as a histotechnologist in HUH's Anatomic Pathology Laboratory (APL) from June 2001 to September 2003. The ALJ found that the laboratory had an inadequate ventilation system,[1] and Ms. Caldwell soon developed difficulties in breathing, tightening in the chest, a burning sensation in her eyes, and other complaints as a result of her contact with various chemicals. On July 28, 2003, Ms. Caldwell complained to her supervisor, noting at this point that she suffered frequent headaches, memory loss, diarrhea, and a skin disorder, and she was evaluated at HUH's Health Unit. On September 11, 2003, Ms. Caldwell was assigned to an adjacent room, where she worked for approximately 40% of the time, but she continued to experience many of her prior symptoms.

In the months that followed, Ms. Caldwell was examined by several physicians and diagnosed as suffering from a number of disorders. In February 2004, she was relocated to a cubicle inside HUH's Office of Pathology. Thereafter, in the words of the ALJ, Ms. Caldwell

experienced considerable improvement in her symptoms in that her headaches diminished, her complained of skin recouped most of its color, and her memory became much sharper.

On February 21, 2004, Ms. Caldwell was examined by Ann–Marie Gordon, M.D., an internist at Washington Hospital Center. Dr. Gordon was of the opinion that there was a causal connection between Ms. Caldwell's exposure to chemical agents in the APL and her symptoms, and she recommended that Ms. Caldwell be removed from the environment that caused her difficulties. This finding of causation was essentially confirmed two months later by Robert D. Bunning, M.D., a rheumatologist at the National Rehabilitation Hospital. Dr. Bunning wrote that prior to her exposure to a concentration of chemicals and diminished ventilation, Ms. Caldwell "was an extremely healthy, happily employed woman."

Meanwhile, in January 2004, Ms. Caldwell began to work part-time at Washington Adventist Hospital (WAH). On June 23, 2004, Dr. Gordon examined Ms. Caldwell once again. According to Dr. Gordon, Ms. Caldwell stated that

she has experienced complete resolution of headache, insomnia and memory loss. However, she complained of increased sensitivity to odors. She indicated that she is unable to tolerate sweet smelling and stinging odors as well as cigarettes (she was able to tolerate cigarettes up until 01/04). She also complained of an intermittent cold sensation in her fingers every day and associated numbness in the fingertips when it is cold. These symptoms are triggered when she

---

1. See HUH brief, at page 2 ("Howard University Hospital, throughout the proceedings in this case, has admitted that the facilities at the Hospital were inadequate.")

touches hot or cold surfaces. Occasionally her hands get flushed and hot. She complained of a painful right 3rd digit. Dr. Gordon also noted that a "recent rheumatologist examination," presumably by Dr. Bunning, had disclosed the possible existence of a "scleroderma-type[2] illness or connective tissue disorder." Dr. Gordon concluded that Ms. Caldwell developed her symptoms several months after commencing her job at HUH, that she "continues to have resolution of most of the initial symptoms that she has experienced," that this improvement "is attributed to her removal from the laboratory environment into an office setting," but that she had developed additional disorders as described above.

Subsequently, on June 1, 2005, at the request of counsel for HUH, Ms. Caldwell was examined by Joel R. Schulman, M.D. Dr. Schulman summarized his findings as follows:

At this time she has what is essentially a normal exam with clear lungs and no related current immediate symptomatology. Her pulmonary functions are entirely normal. She lists multiple continued symetic complaints, which are enumerated. At this time I feel several but not necessarily all of her current symptoms are consistent [with] a chronic low-level exposure to volatile organic compounds and picture [sic] of chemicals. That would include her development of positive ANA, her development of an irritable bowel syndrome and possibly the skin changes that she enumerated. More immediate symptomatology related to direct exposure might explain the episodes of sensation of heaviness in the chest and the headache. As to any specific temporal etiology I feel this is more related to a prolonged and continued exposure at varying levels in association with her current and past employment.

## II.

After reviewing the evidence, the ALJ found that at WAH, Ms. Caldwell

did not experience any of the earlier symptoms she had complained of while working with Howard University Hospital [because] this job site was equipped with an adequate ventilation system and claimant's work therein was primarily supervisory.

In his Conclusions of Law, the ALJ wrote that Ms. Caldwell was entitled to recover "causally related medical expenses incurred as of June 23, 2004, the date when claimant's initial symptoms attributable to the laboratory environment *had completely resolved.*" (Emphasis added.)

Ms. Caldwell, as we have noted, appealed to the CRB, which ruled, in pertinent part, as follows:

The ALJ found, and the record indicates, that Petitioner's treating physician, Dr. Ann Marie Gordon, in her report of July 7, 2004, opined that Petitioner's condition had effectively resolved and that she was able to return to her pre-injury employment as of June 23, 2004. [Citation to record omitted.] Respondent stresses that June 23, 2004 is four months after respondent had relocated her from the laboratory into an office, where she was no longer exposed to chemicals.

\* \* \*

After a close review of the record in this matter, this Panel agrees with Respondent that there is substantial evidence to support the ALJ's conclusion that Peti-

---

**2.** Scleroderma is an auto-immune disorder which often involves the hardening of the skin.

tioner's condition and symptoms attributable to Respondent's laboratory environment had completely resolved as of June 23, 2004 and Respondent is responsible for Petitioner's medical expenses until that date

This petition for review followed.

### III.

Ms. Caldwell contends, in substance, that there is no substantial medical or other evidence in the record to support a finding that *all* of the disorders resulting from her exposure to chemical agents at HUH and from the defective ventilation at APL had resolved on or before June 23, 2004. HUH argues, on the other hand, that although Ms. Caldwell continued to have certain symptoms, her remaining problems were not attributable to her work at HUH, that Ms. Caldwell's counsel "has confused the resolution of the Claimant's exposure at [HUH] with the resolution of the Claimant's [pre-existing] allergy," and that substantial evidence supported the ALJ's finding and affirmance by the CRB. We agree with Ms. Caldwell that the record lacks substantial evidence that all of her HUH-related symptoms had dissipated on the date in question.

In *Potomac Electric Power Co. v. District of Columbia Dep't of Employment Servs.*, 835 A.2d 527 (D.C.2003), this court articulated the applicable standard of review as follows:

We must uphold the Director's decision if it is in accordance with the law and supported by substantial evidence. *See* D.C.Code §§ 2–501, –510 *et seq.* (2001); *UPS v. District of Columbia Dep't of Employment Servs.*, 834 A.2d 868 (D.C. 2003). "Evidence is substantial when a reasonable mind might accept it as adequate to support a conclusion." *Belcon, Inc. v. District of Columbia Water & Sewer Auth.*, 826 A.2d 380, 384 (D.C.

2003) (quoting *Epstein, Becker & Green v. District of Columbia Dep't of Employment Servs.*, 812 A.2d 901, 903 (D.C. 2002)) (internal quotation marks and brackets omitted). The corollary of this proposition is that if the Director's findings are *not* supported by substantial evidence, they cannot be sustained, and we are required to set them aside. *Jadallah v. District of Columbia Dep't of Employment Servs.*, 476 A.2d 671, 676 (D.C.1984).

Further, the Director "is bound by the [ALJ's] findings of fact if those findings were supported by substantial evidence in the record, considered as a whole." *Pickrel v. District of Columbia Dep't of Employment Servs.*, 760 A.2d 199, 203 (D.C.2000). Indeed, the Director must defer to the ALJ even if, had he been the trier of fact, he might have reached a contrary result based on an independent review of the record. *Id.* "The ALJ's findings of fact are binding at all subsequent levels of review unless they are unsupported by substantial evidence, and this is true even if the record contains substantial evidence to the contrary." *Raphael v. Okyiri,* 740 A.2d 935, 945 (D.C.1999) (citation omitted). This court, too, must therefore defer to the ALJ's findings.

*Id.* at 530 (parallel citations omitted).

Dr. Gordon, Dr. Bunning and Dr. Schulman all agree that the chemical solvents of APL, when combined with the defective ventilation at that laboratory, caused or significantly contributed to the various conditions of which Ms. Caldwell complained. It is probably also fair to state that Dr. Gordon and Dr. Schulman, both of whom examined Ms. Caldwell after June 23, 2004, agree that most of the disorders generated by the conditions at HUH had been resolved by that date. The difficulty with the ALJ's analysis, affirmed by the

CRB, is that the word "most" was effectively construed at both levels as though it meant "all." Our examination of the medical reports reveals no substantial evidence, or evidence at all, that the effects of conditions at HUH had been entirely dissipated.

Dr. Bunning's examination was conducted two months before June 23, 2004, and his report did not focus on the issue now before us. On April 22, 2004, Dr. Bunning wrote, *inter alia:*

> It is possible that the patient has an illness that was triggered by exposure to these chemicals. She has no scleroderma on examination at present, but [her test results] and history of chemicals suggest a possible scleroderma-type illness or connective tissue disease at least associated with solvents and chemicals.

The *possible* existence of illness in April 2004 neither proves nor disproves the proposition that all HUH-related symptoms had dissipated two months later.

Dr. Gordon found that as of June 23, 2004, Ms. Caldwell "continue[d] to have resolution of *most* of the initial symptoms that she has experienced." (Emphasis added.) Dr. Gordon's use of the words "most of," however, means by definition that *some* symptoms remained. Moreover, according to Dr. Gordon, Ms. Caldwell reported new symptoms, including increased sensitivity to odors, numbness in her fingertips, and a painful digit, as well as the development of scleroderma-type illness or connective tissue disorder. A year later, Dr. Schulman conducted "essentially a normal exam with clear lungs and no immediate symptomatology." Nevertheless, he found that Ms. Caldwell continued to have a number of "current symptoms" which he believed to be "consistent [with] a chronic low-level exposure to volatile organic compounds and ... chemicals." Dr. Schulman believed that "any specific temporal etiology" was related to "a prolonged and continued exposure [to organic compounds and chemicals] at varying levels in association with her current and past employment."

There appears to be no question that the transfer of Ms. Caldwell from the APL to an office alleviated many or most of her problems. Ms. Caldwell also acknowledged, at her deposition, that she was exposed at WAH to the same chemical agents that had harmed her at HUH, although at WAH the ventilation was satisfactory. These facts support a finding that by June 23, 2004, Ms. Caldwell's condition was better—perhaps much better—than it had been, and also that chemical agents at WAH may have contributed to her most recent symptoms. We are unable to discern in the record, however, any substantial evidence to support the ALJ's finding, contained in a Conclusion of Law, that by June 23, 2004 "claimant's initial symptoms attributable to the laboratory environment had *completely* resolved." (Emphasis added.) Accordingly, the decision of the CRB is reversed, and the case is remanded to the CRB for further proceedings consistent with this opinion.

*So ordered.*