Marie CLARK, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

Bell Atlantic–Washington,
D.C., Inc., Intervenor.

No. 98–AA–474.

District of Columbia Court of Appeals.

Argued Oct. 12, 1999.

Decided April 26, 2001.

Benjamin T. Boscolo, Greenbelt, MD, for petitioner.

Charles L. Reischel, Deputy Corporation Counsel, and Jo Anne Robinson, Principal Deputy Corporation Counsel, submitted a statement in lieu of brief on behalf of respondent.

Donald P. Maiberger, Rockville, MD, for intervenor.

Before STEADMAN, RUIZ, and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

■ Petitioner, Marie Clark, appeals from a decision of the Director of the District of Columbia Department of Employment Services (DOES) denying her claim for temporary total disability benefits from July 14, 1995, through August 28, 1995, medical expenses, and accrued interest on benefits, based on aggravation of temporomandibular joint dysfunction (TMJ) she claims resulted from her work as a telephone operator. After a hearing, the hearing examiner concluded that claimant's condition did not arise out of, or in the course of, her employment, and therefore denied the claim. In her appeal of the examiner's order, petitioner argued that the examiner "neither discussed nor analyzed" evidence of aggravation. The Director affirmed the hearing examiner's decision. Petitioner argues that the hearing examiner and Director both erred because even though they correctly found that her TMJ was not *caused* by her workplace duties (which she does not dispute), they did not consider whether her admittedly existing TMJ condition was *aggravated* by having to wear a headset in order to perform her duties, as found by her treating physician. We conclude that the hearing examiner and the Director failed to take into consideration or explain the reasons for rejecting the deposition testimony of petitioner's treating physician and, therefore, remand for a thorough review of the record, further findings of fact, and an amended compensation order.

## I. Factual History

Petitioner worked as a directory assistance operator for Bell Atlantic, D.C. (and its predecessor, C & P Telephone) for fifteen years. She began experiencing pain in her jaw and on the right side of her face in September 1994, and visited her

family dentist, Dr. John Jones, seeking relief. Prior to September 1994, claimant had never been involved in any kind of accident or incident where she injured her jaw, face, head, neck or shoulders. Dr. Jones referred her to Dr. Daniel Howard, an oral surgeon, who examined her, took x-rays, diagnosed her with TMJ, and instructed her to stop wearing the telephone headset which she wore while at work.

Ms. Clark notified her supervisor of the restriction, and her employer replaced the headset with a model that did not have a piece inserted into the ear. When her symptoms did not go away, Dr. Howard provided a bite guard for her to wear at night, but this did not alleviate her pain. Dr. Howard concluded that petitioner's condition warranted surgery, and referred her to Dr. Boucree, a surgeon specializing in TMJ problems.

Dr. Boucree first examined Ms. Clark on June 20, 1995. At that time, Ms. Clark did not talk to Dr. Boucree about whether her condition was aggravated by the ear piece she wore at work. The examination showed that claimant was missing most of her teeth, which caused an overclosure of the lower jaw and TMJ. Dr. Boucree recommended surgery. On July 14, 1995, petitioner underwent surgery to correct the TMJ condition and returned to work on August 28, 1995.

In a deposition taken on May 8, 1996, Dr. Boucree explained that Ms. Clark had been referred to him by Dr. Howard, who was treating her for correction of a deformity of her upper jaw which he referred to as "vertical loss of the mid-face" caused by the loss of her teeth. Dr. Howard was to correct the problem by grafting additional bone into place to increase the vertical height of the face and restore a proper bite, but needed Dr. Boucree to address the TMJ problem first. Dr. Boucree explained that when the teeth are lost, the part of the jaw which supports the teeth atrophies, and eventually the upper and lower jaws come to rest on one another, closer than they were meant to, causing loss of the mid-face height. In addition, this can cause the end of the jawbone to rest on the tissues of the joint which hold the nerves and blood, causing pain. Dr. Boucree performed surgery to correct the TMJ problem, and recommended that she wait before returning to work for the surgery wound to heal completely. He also opined that the headset was aggravating her existing problems with TMJ.[1]

Dr. Steven Guttenberg examined Ms. Clark in November 1995, after her surgery, at the request of the employer prior to the hearing. In a deposition taken on May 15, 1996, Dr. Guttenberg opined that wearing the headset at work had neither caused nor exacerbated Ms. Clark's TMJ problem and that wearing the headset would not cause her to experience symptoms that she would not have otherwise

---

1. In response to questions posed by the employer's counsel, Dr. Boucree opined as follows:

Q: With respect to any irritation of her temporomandibular joint on the right, prior to that time that she had her surgery ... that was an irritation that, in your opinion, was caused by the pressure of the earpiece against the back ... of the ... retrodistal area?
A: Yes. What we said was we indicated that it was our opinion that the earpiece was pushing the retrodistal tissues in closer proximity to the head of the condyle. And as she moved ... the retrodistal tissues were being pushed against by the earpiece and that's why the irritation, in our opinion, was occurring.
Q: Okay. And to relieve that irritation she had to remove the earpiece from her ear?
A: Remove the irritation, yes. Remove the earpiece, but also repositioning of the disk ...

experienced.[2] Dr. Guttenberg explained that during his examination he had found claimant to be missing all of the teeth on the right side of her mouth. She had an ill-fitting denture which was hidden beneath her upper lip, evidence that her upper jaw was melting away and causing her dentures not to fit. He concluded after reviewing the x-ray and magnetic resonance imaging (MRI) reports, neither of which showed any pathology, and examining Ms. Clark, that her TMJ problems were likely caused by the fact that she was missing her teeth, which caused overclosure of her lower jaw.[3]

## II. Standard of Review

 This court must affirm an agency decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* D.C.Code § 1–1510(a)(3) (1999); *Charles P. Young Co. v. District of Columbia Dep't of Employment Servs.*, 681 A.2d 451, 455–56 (D.C.1996). In a worker's compensation case, the court defers to the determination of the Director of DOES as long as the Director's decision flows rationally from the facts, and those facts are supported by substantial evidence on the record. *See Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 470, 472 (D.C.1996) *(WMATA I).* If so, the court's consideration ends. *See Shepherd v. District of Columbia Dep't of Employment Servs.*, 514 A.2d 1184, 1186 (D.C. 1986). "Substantial evidence is more than a mere scintilla." *Children's Defense Fund v. District of Columbia Dep't of Employment Servs.*, 726 A.2d 1242, 1247 (D.C.1999) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* If substantial evidence exists to support the Director's finding, the existence of substantial evidence contrary to that finding does not permit the Court to substitute its judgment for the Director's. *See Gary v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 1205, 1209 (D.C.1998). The Director's le-

---

2. During the deposition, Dr. Guttenberg testified that:

> With a reasonable degree of medical certainty I feel that there is no way that the headset could cause temporomandibular joint internal derangement, ... that there would be no relationship between wearing a headset and exacerbating a pre-existing condition of temporomandibular joint or, as we said before, to cause that type of condition.... I do not feel it has anything to do with her TMJ problem at all.

3. Following a statement of this opinion, Dr. Guttenberg went on to testify:

> In this case in particular I think there are ... a number of other causes that are much more probable to create the sort of problem that Ms. Clark demonstrates, number one. And number two is that I am not aware of any medical document, book, publication at all that any case has ever been reported of anything even similar to wearing a headset causing temporomandibular joint problems.

...

> I think it's much more likely that the problems that this woman was suffering were caused primarily from the fact that she had no maxillary [upper] teeth. She has an ill-fitting maxillary denture. She has resorption or melting away of her upper jaw. She has no lower teeth.

...

> Without teeth, the muscles will tend to not have a stop and continue to pull the jaw closer to the skull.
>
> The importance of that is that when the condyle portion of the lower jaw is—actually, the condyle portion of the lower jaw is separated from the skull by soft tissues, a disk or meniscus and other soft tissues. And as the jaw rubs against those areas, it can cause pain, swelling, inflammation.
>
> Also ... with having missing teeth ... the muscles are somewhat out of balance and those can also cause pains, similar to that which Ms. Clark described.

gal rulings are reviewed *de novo*. *See WMATA I*, 683 A.2d at 472.

■ In evaluating the evidence of record, the agency must take into account the testimony of a treating physician, which is ordinarily preferred over that of a physician retained solely for litigation purposes. *See Harris v. District of Columbia Dep't of Employment Servs.*, 746 A.2d 297, 302 (D.C.2000); *Stewart v. District of Columbia Dep't of Employment Servs.*, 606 A.2d 1350, 1353 (D.C.1992). Notwithstanding a "preference" for the treating physician's testimony over that of a physician hired to evaluate a workers' compensation claim, the hearing examiner, as judge of the credibility of witnesses, may reject the testimony of a treating physician and decide to credit the testimony of another physician when there is conflicting evidence. *Canlas v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 1210, 1211–12 (D.C. 1999). In so doing, the hearing examiner must give reasons for rejecting a treating physician's testimony. *See id.; McKinley v. District of Columbia Dep't of Employment Servs.*, 696 A.2d 1377, 1386 (D.C. 1997) (equivocal nature of the treating physician's testimony sufficient basis for hearing examiner to reject that evidence and conclude that the claimant's injury was not work-related).

### III. Discussion

It is well established that in the District of Columbia, a disability resulting from the aggravation of a pre-existing condition is compensable under the Workers' Compensation Act, *see* D.C.Code § 36–308(6)(A) [4]; *Washington Hosp. Ctr. v. District of Columbia Dep't of Employment Servs.*, 744 A.2d 992, 997 (D.C.2000), even where non-employment factors contributed to claimant's malady, *see Ferreira v. District of Columbia Dep't of Employment Servs.*, 667 A.2d 310, 312–13 (D.C.1995) (*Ferreira II*); *Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 660 (D.C.1987) (*Ferreira I*) (quoting *Wheatley v. Adler*, 132 U.S.App.D.C. 177, 181, 407 F.2d 307, 311 (1968)).

■ Ms. Clark argues that the hearing examiner and Director erred because they neglected to consider whether her existing TMJ condition was aggravated by having to wear the telephone headset in performing her job as a telephone operator. In evaluating a worker's compensation claim, there is a presumption that the claim falls within the coverage of the statute, *see* D.C.Code § 36–321(1); *Ferreira II*, 667 A.2d at 312, if the claimant provides some evidence of a disability and a workplace condition which has the potential to have caused the disability. *See Ferreira I*, 531 A.2d at 660. Once aggravation is proved the presumption of compensability will be applied to establish the causal connection necessary to prove a compensable claim. *See Washington Vista Hotel v. District of Columbia Dep't of Employment Servs.*, 721 A.2d 574, 579 (D.C.1998). The presumption may be rebutted by evidence specific and comprehensive enough to sever the causal connection. *See Charles*

---

4. D.C.Code § 36–308(6)(A) provides:
 If an employee receives an injury, which combined with a previous occupational or non-occupational disability or physical impairment causes substantially greater disability or death, the liability of the employer shall be as if the subsequent injury alone caused the subsequent amount of disability
 . . .

*See also WMATA v. District of Columbia Dep't of Employment Servs.*, 704 A.2d 295, 297–99 (D.C.1997) (*WMATA II*) (discussing the policies underlying § 36–308(6)); *Daniel v. District of Columbia Dep't of Employment Servs.*, 673 A.2d 205, 207–08 (D.C.1996).

*Whittaker v. District of Columbia Dep't of Employment Servs.,* 668 A.2d 844, 845 (D.C.1995).

In this case the hearing examiner and the Director of DOES gave claimant the benefit of the presumption that her TMJ was caused by her work because she showed a disability, her TMJ condition, and claimed that wearing her headset, which was a condition of her employment, aggravated the TMJ. The hearing examiner, however, found that the presumption of a causal connection between the TMJ and the workplace was rebutted by Dr. Guttenberg's specific and comprehensive testimony that use of the headset was not causally related to her disability and, therefore, went on to consider the weight of the evidence independent of the presumption.[5] In the compensation order, the hearing examiner appears to find only that the TMJ "was not causally related to her use of a headset at work." Petitioner does not dispute this, but argues that neither the examiner nor the Director considered whether the headset aggravated her TMJ, a condition she acknowledges was initially caused by factors unrelated to her work.

The hearing examiner recognized that medical opinions of a treating physician, such as Dr. Boucree, are to be given pref-

erence in compensation cases. In the compensation order, the hearing examiner stated that "Dr. Boucree's [the treating physician's] report of July 11, 1995 failed to offer a medical rationale for any connection between claimant's TMJ problems and her use of [a] headset at work." He also stated that "Dr. Boucree to whom claimant had been referred by her family dentist failed to render an opinion regarding this relationship." Consequently, the hearing examiner relied on Dr. Guttenberg's opinion that there was no causal connection between petitioner's use of a telephone headset and her TMJ. This overlooked the full record before the hearing examiner. Although neither Dr. Howard, the dentist, nor Dr. Boucree, the surgeon, stated an opinion in their initial treatment reports made prior to surgery about the causal or aggravating factors of petitioner's condition, in his deposition taken on May 8, 1996, Dr. Boucree, though agreeing with Dr. Guttenberg that the *cause* of claimant's TMJ was the loss of her teeth, clearly opined that wearing the headset with an earpiece that went into the ear *aggravated* her underlying condition and caused pain and irritation.[6] The hearing examiner also should have considered the inference that, because Dr. Howard advised Ms. Clark to stop wearing the head-

---

**5.** The hearing examiner specifically noted in the Compensation Order:

> In this case, employer presented the May 15, 1996 deposition of Dr. Guttenberg, wherein he testified that his examination of claimant on November 8, 1995 revealed that her denture was "wobbly and not supported well by the underlying bone and tissues" .... that his review of claimant's earlier laboratory reports from Washington Hospital Center and CT scan and MRI from Howard University Hospital indicated no pathology of either the soft or hard tissues of the joint.... That "[w]ith a reasonable degree of medical certainty I feel that there is no way that the headset could cause temporomandibular joint internal derangement."

**6.** In response to questions posed by the claimant's counsel, Dr. Boucree stated:

> Q: Do you have an opinion that you can express, within reasonable medical probability, as to whether or not wearing the headset, the earpiece that went into the ear, aggravated the underlying condition?
> A: Without a doubt.
> . . .
> Q: Okay. And then when you put the earplug in your ear, what happens?
> A: It has a tendency to tense or taut the tissues against the head of the condyle.
> Q: And what result does that produce?
> A: Pain.

set, he thought the headset aggravated her condition. Therefore, the hearing examiner had two treating physicians' opinions to consider, but did not do so.

The decision of the Director of the Department of Employment Services continued misreading of the record. In her decision, she stated

> At no time during preoperative and postoperative visits did Dr. Boucree opine that claimant's condition was work related or was precipitated or exacerbated by prolonged use of a telephone headset. His many reports failed to indicate any objective medical evidence substantiating claimant's claim that her condition is attributable to her headset at the workplace.

While the Director's observation is correct that Dr. Boucree did not address in his clinical records whether petitioner's condition was work-related, he had no reason to do so because he was not aware at the time of his treatment of Ms. Clark that an opinion was required.[7]

As neither the hearing examiner nor the Director refers to Dr. Boucree's deposition testimony that wearing the headset aggravated her TMJ, or explains why it was rejected, we cannot be confident that either agency official properly considered his deposition testimony in coming to a decision.[8] We remand this case for consideration of the entire record by the agency, in accordance with this opinion. In remanding, we express no view on the merits of petitioner's claim of aggravation, as it is for the hearing examiner to evaluate the record in the first instance. *See Hill v. District of Columbia Dep't of Employment Servs.*, 717 A.2d 909, 912 (D.C.1998) ("Administrative and judicial efficiency require that all claims be first raised at the agency level to allow appropriate development and administrative response before judicial review.") (citation omitted).

*Reversed and remanded.*

---

7. We note that both the hearing examiner and the Director rely on a finding that claimant told her doctors that her condition was not work-related. The Director states that she "conceded via her responses to questions on a health insurance form that her symptomologies were not related to her work environment or job duties." The hearing examiner finds that she "unambiguously stated on her health insurance forms that her condition was not related to her employment." A cursory review of the document to which these findings refer makes it obvious that Ms. Clark did not fill out the form herself, but signed a form which was filled out by someone else in the physician's office. In his discussion of the case the hearing examiner states that "claimant's own testimony disclosed that she admittedly checked the answer box 'No' to a question on insurance forms whether her condition was related to her employment." This is not so. In response to questions posed to her at the hearing by the employer's counsel, Ms. Clark testified that although she had signed the insurance forms, she had done so before they were completed by someone in Dr. Boucree's office.

8. This may be as a result of the fact that the deposition was taken in May, 1996, a few weeks after the hearing in April, and submitted as part of a supplemental record.