Jerry BLACK, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

and

The Washington Post, Intervenor.

No. 00–AA–1102.

District of Columbia Court of Appeals.

Argued May 8, 2002.

Decided July 3, 2002.

Alan M. Perlman, Silver Spring, MD, for
petitioner.

John F. Ward, Washington, DC, with whom David A. Silvers was on the brief, for intervenor.

Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.

Before WAGNER, Chief Judge, WASHINGTON, Associate Judge, and KING, Senior Judge.

KING, Senior Judge.

Jerry Black petitions for review of a Decision of the Director of the Department of Employment Services (DOES) affirming a Hearing and Appeals Examiner's decision to "suspend payment of temporary total disability benefits...." He contends that (1) the evidence was insufficient to support suspension of a previously issued compensation order; (2) he was improperly denied payments for temporary total disability benefits while incarcerated; and (3) the Director erred in granting the employer credit for temporary total disability overpayments against any future award for wage loss. With respect to the first two contentions, we affirm. We remand for further consideration on the third.

### I.

Black was awarded temporary total disability ("TTD") benefits and payment of causally related medical expenses for a work-related back injury he sustained on October 30, 1995, in a compensation order dated April 18, 1997. In late 1999, the employer moved to suspend TTD payments for the period from January 1, 1999 to October 22, 1999, based on Black's asserted failure to cooperate with vocational rehabilitation efforts and because Black voluntarily limited his income.

At the hearing on the motion to suspend, Nancy Forest, a vocational consultant for First Rehabilitation Resources, testified that claimant refused to participate in the Job Club program which prepares individuals prior to commencing a job search. Job Club required no physical exertion. In a letter dated June 18, 1999, Dr. Azer, Black's primary care physician, diagnosed Black as unable to return to his former position; however, he had reached maximum medical improvement. After receiving the physician's release, Black again refused to participate in Job Club. Finally, Black testified that he was taking care of his ill father from mid-July through October 1999 in South Carolina and was thus unable to participate in rehabilitation programs. It was revealed, however, that this testimony was false and that Black was in fact incarcerated in a correctional facility in Lorton, Virginia from July 14, 1999 to October 8, 1999, pursuant to a order by the District of Columbia Superior Court.

The examiner issued a compensation order finding that TTD payments should have been suspended from February 25, 1999 to July 14, 1999, because of Black's failure to cooperate with employer's vocational rehabilitation efforts. In addition, the examiner ruled that TTD benefits should have been suspended while Black was incarcerated from July 14, 1999 through October 8, 1999 on the ground that the fact of incarceration barred benefits. Finally, the examiner concluded that the employer was entitled to credit for any TTD benefits paid from February 25, 1999 through July 14, 1999, against any future wage loss benefits, should they be awarded. The Director affirmed the compensation order with respect to the suspension of benefits for Black's refusal to cooperate with vocational rehabilitation and with respect to the ruling regarding credit against a future award. However, on the payment during incarceration issue, the Director affirmed on different grounds. The Director

concluded that because TTD benefits had been suspended prior to incarceration, that suspension continued through the period of incarceration. This petition for review followed.

## II.

▆ Before us, Black first contends that the evidence in the record was insufficient to support modification of the prior compensation order on the ground that he failed to participate in the vocational rehabilitation program. We disagree. On appeal we review agency orders under the "substantial evidence" standard. *Harris v. District of Columbia Office of Worker's Compensation*, 660 A.2d 404, 407 (D.C. 1995). An agency decision must be affirmed when: (1) the decision states findings of fact on each material, contested factual issue; (2) the findings are based on substantial evidence; and (3) the conclusions of law follow rationally from the findings. *See* D.C.Code § 36–322(b)(2) (1997); *Perkins v. District of Columbia Dep't of Employment Servs.*, 482 A.2d 401, 402 (D.C.1984). Substantial evidence is relevant evidence such as a "reasonable mind might accept as adequate to support a conclusion." *Giles v. District of Columbia Dep't of Employment Servs.*, 758 A.2d 522, 524 (D.C.2000) (citation omitted).

In this case, the hearing examiner found that commencing with a missed appointment for vocational assessment on February 25, 1999, Jerry Black failed to cooperate with vocational rehabilitation pursuant to D.C.Code § 36–307(d) (1997). The hearing examiner credited the testimony of Nancy Forest, the rehabilitation case manager, that Black attended his initial vocational assessment meeting but refused to participate in Job Club, and thereafter, did not meet with her, despite numerous voice mail messages and letter communications. The examiner found that Job Club did not require physical exertion, and therefore, a physician's release was not necessary as "vocational rehabilitation is beyond the scope of medical treatment."[1] Black did not participate in Job Club and refused to undertake vocational assessment testing even after Dr. Rida Azer, his primary care physician, stated that he could begin vocational rehabilitation. Based on these facts, we are satisfied that there was substantial evidence to support the finding of the examiner. Thus, we reject Black's claim on that ground.

▆ We next consider Black's contention that he was incorrectly denied payments for TTD benefits while incarcerated solely because of the incarceration. While the hearing examiner found that Black was not entitled to benefits while he was in prison on that ground, the Director concluded that Black should be denied benefits during that period because "[u]nder the facts of this case, even if Claimant had not been incarcerated, he would not have been entitled to benefits as of July 14, 1999, as Claimant's temporary total disability benefits were already suspended prior to his incarceration." It is the Director's ruling that is before us for review, not the hearing examiner's.

D.C.Code § 36–307(d) (1997) states:

.... If at any time during such period the employee unreasonably refuses ... to accept vocational rehabilitation the Mayor shall, by order, suspend the payment of further compensation, medical payments, and health insurance coverage during such period, unless the circumstances justified the refusal.

---

1. Jerry Black's neurosurgeon, Dr. Guy Gargour, wrote a prescription for an exercise program and vocational rehabilitation on January 20, 1999.

This provision allows for the suspension of benefits where the employee unreasonably refuses to cooperate. Black's non-cooperation began in February 1999, months before he was incarcerated.[2] The suspension of his benefits was effective prior to the incarceration, and continued until such time as Black began to cooperate, which never occurred. In fact, the record is replete with evidence that after February 1999 Black made no effort to participate in vocational rehabilitation, that he did not disclose that he was incarcerated, and that he lied to witnesses, his employer, and the hearing examiner about his whereabouts between July 14, 1999 and October 8, 1999. Therefore, we are satisfied that the Director could reasonably find that Black's lack of cooperation justified suspension of benefits during the period Black was incarcerated.

## III.

■ Finally, Black contends that the Director erred in affirming the hearing examiner's conclusion that an overpayment of TTD benefits entitled the employer to a credit against any future wage loss benefit award. As with the issue regarding suspension of benefits because of incarceration discussed above, the governing statutes neither allow nor forbid granting credit against subsequent awards. The agency, however, concluded that such credit may be applied. Because we are not satisfied that the Director has provided sufficient reasons for so concluding, we remand for further consideration.

The scope of review for agency decisions is well established. The DOES Director's decision must be affirmed "unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Clark v. District of Columbia Dep't of Employment Servs.*, 772 A.2d 198, 201 (D.C.2001). "Where an administrative agency is delegated broad authority to administer a statutory scheme, as here, we defer to a reasonable construction of the statute made by the agency." *Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95, 97 (D.C.1988) (citations omitted). " '[O]rdinarily' ... 'this court will not attempt to interpret the agency's statute until the agency itself has done so.' Instead, we will remand to permit the agency to engage in the necessary analysis of the legislation it is charged with carrying out." *King v. District of Columbia Dep't of Employment Servs.*, 742 A.2d 460, 466 (D.C.1999) (quoting *Wahlne v. District of Columbia Dep't of Employment Servs.*, 704 A.2d 1196, 1199 (D.C.1997)) (case remanded because the Director failed to interpreted the statute).

In the compensation order of December 22, 1999, the Hearing Examiner stated:

Claimant has not proffered any applicable case law or provision in our Act which prohibits employer from taking credit for overpaid wage loss benefits against future wage loss payment. Therefore, employer shall be entitled to take credit for the overpayment of compensation against any future wage loss benefits due claimant.

The Director, after quoting this passage, stated: "The Director can find no error in the Hearing Examiner finding that Em-

---

2. We note that the governing statute is silent on the issue of suspension of payment due to incarceration. Other jurisdictions are divided on whether benefits may be suspended solely due to incarceration. However, where the applicable statute is silent on that question, the majority of courts have concluded that disability benefits should be paid to an incarcerated claimant. *See Bowen v. Smith*, 342 Md. 449, 677 A.2d 81, 85 87 (1996); *King v. Industrial Comm'n of Utah*, 850 P.2d 1281, 1295 (Utah Ct.App.1993). In light of our disposition, we express no view on the issue.

ployer is entitled to take credit for the overpayment of compensation against any future wage loss benefits due Claimant." No other explanation was provided in support of the exercise of a power by the agency which was neither expressly allowed or expressly forbidden by the governing statute. Although, as we have said, this court defers to the agency's interpretation of its governing statute, we think in those circumstances the agency should provide some basis for its actions. As we stated in *Coumaris v. District of Columbia Alcoholic Beverage Control Bd.,* 660 A.2d 896, 899–900 (D.C.1995) (citations omitted):

> No deference is appropriate ... where the agency has failed to identify the question of statutory construction to be addressed ... It would be incongruous to accord substantial weight to an agency's interpretation of a statute where the record is barren of any indication that the agency gave any consideration at all to the statutory language or to the structure or purpose of the provisions which were ostensibly being construed.

Because the construction of the statutory provision by the Director is inadequate to serve our purposes, we remand the case to the agency for an authoritative interpretation of the language of the statute, its legislative history, and DOES precedent.

The decisions of the Director and the hearing examiner are affirmed in part, but the case is remanded for further proceedings consistent with this opinion.

*So ordered.*