Celane DARDEN, petitioner,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent,**

and

**Guest Services, Inc., et al., Interveners.**

No. 05–AA–365.

District of Columbia Court of Appeals.

Argued Oct. 11, 2006.
Decided Nov. 22, 2006.

---

**412**

Benjamin T. Boscolo, Greenbelt, MD, for petitioner.

Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Deputy Attorney General, filed a statement in lieu of brief for respondent.

Mary G. Weidner, with whom Kelly D. Fato, was on the brief, for interveners.

Before WASHINGTON, Chief Judge, and KRAMER and THOMPSON, Associate Judges.

THOMPSON, Associate Judge:

Petitioner Celane Darden challenges a March 17, 2005 decision by the District of Columbia Department of Employment Services ("DOES") Compensation Order Review Board ("the Board")[1] that upheld an August 20, 2003 Compensation Order of the DOES Office of Hearings and Adjudication ("OHA"). The August 20, 2003 OHA Compensation Order, issued after a hearing held on July 30, 2003, suspended the temporary total disability workers' compensation benefits that Darden had been receiving since December 3, 2001, on the ground that Darden unreasonably failed to cooperate with her employer's efforts to provide her with vocational rehabilitation.

The Board found that OHA's August 20, 2003 Compensation Order was supported by substantial evidence in the record and was in accordance with the law. We affirm the Board's order insofar as it upholds OHA's determination that Darden unreasonably failed to cooperate with vocational rehabilitation as of April 22, 2003. However, we reverse that portion of the Board decision that rejected outright, as a matter that "cannot be addressed on appeal," Darden's claim that she cured her failure to cooperate.

## FACTUAL BACKGROUND

Darden sustained an on-the-job injury to her left knee on September 1, 1995, while working as a cook. She sought treatment from orthopedic surgeon Rafik D. Muawwad, underwent knee surgery, and eventually returned to work, but continued to complain of pain in her knee and had limited mobility. After a hearing on April 9, 2002, OHA determined in a compensation order dated July 28, 2002 that Darden was entitled to temporary total disability benefits effective December 3, 2001. According great weight to Dr. Muawwad's determination that Darden's "activities are to be limited in avoidance of prolonged standing and walking," OHA stated in its July 28, 2002 compensation order that Darden was "in need of a job that would

---

1. We note that D.C.Code § 32–1521.01 and current DOES regulations (7 DCMR § 250) refer to the Board as the "Compensation Order Review Board." However, the letterhead of the March 17, 2005 Board decision and the parties refer to the Board as the "Compensation Review Board," the shorter-form designation that DOES adopted in its Administrative Policy Issuance No. 05–01 (February 5, 2005).

accommodate her need to sit intermittently."

Thereafter, as required under the D.C. Workers' Compensation Act of 1979, as amended, D.C.Code § 32–1501 *et seq.*, Darden's former employer, Guest Services, Inc. ("the Employer"), sought to provide Darden with vocational rehabilitation services. *See* D.C.Code § 32–1507 (formerly D.C.Code § 36–307) and 7 DCMR § 229.1. Beginning in November 2002, the Employer engaged the services of a vocational rehabilitation specialist, who assessed Darden's background, work history and transferable skills; reviewed Darden's restrictions as stated in the July 28, 2002 compensation order; and then sought out sedentary positions for which Darden could apply. Although Darden missed at least one job application appointment that the vocational rehabilitation specialist had scheduled, she applied for most of the positions that the specialist initially identified.

On April 4, 2003, Darden advised the vocational rehabilitation specialist that she could no longer search for a job because Dr. Muawwad was "going to put her on total disability." On April 22, 2003, Darden told the rehabilitation specialist that she was "following her doctor's orders in not participating in vocational rehabilitation" and that she therefore would be "unable to accommodate" any of the dates that the rehabilitation specialist proposed as dates to apply for work and to assess Darden's typing speed. Because of Darden's refusal to participate, the Employer directed the specialist to discontinue his

efforts. The specialist closed Darden's file on April 25, 2003.

The Employer thereafter requested that the July 28, 2002 compensation order be modified so as to suspend Darden's benefits on account of her failure to cooperate with the Employer's vocational rehabilitation efforts.[2] On July 30, 2003, OHA Administrative Law Judge ("ALJ") Jeffrey Russell conducted an evidentiary hearing regarding the modification request. He found that Darden's physical condition as it related to her left knee had not changed since the April 9, 2002 hearing, and he rejected Darden's argument that Dr. Muawwad's opinion that she could not work justified her refusal to participate in vocational rehabilitation.

The ALJ accepted Dr. Muawwad's opinion that Darden could not work in "employment that requires any strenuous activity," but found that Dr. Muawwad's "broader statements" (in reports dated March 31, 2003 and April 23, 2003) regarding Darden's "total disability," and his failing "to see how she can go to work" when she "does not have the skills for any light employment," did not constitute and could not be accepted as medical opinions. The ALJ further found that these statements were "not sufficient to deny Employer the opportunity to try to place [Darden] in a suitable alternative job." The ALJ further found that "nothing in the doctor's progress notes precludes [Darden] from a job that is not strenuous and requires nothing more of her physically than sitting or standing as needed while operating a cash register or ticket dispenser." The ALJ commented that one of Darden's doc-

2. D.C.Code § 32–1507(d) (1999) states in relevant part that, "[i]f at any time during such period the employee unreasonably refuses to ... accept vocational rehabilitation the Mayor shall, by order, suspend the payment of further compensation ... unless the circumstances justified the refusal." D.C.Code

§ 32–1507(d) (1999). Thus, where a claimant is found to have unreasonably refused to cooperate with an employer's vocational rehabilitation efforts, suspension of previously ordered benefits is warranted. *See Black v. District of Columbia Dep't. of Employment Services*, 801 A.2d 983, 986 (D.C.2002).

umentary exhibits, a letter on Darden's counsel's letterhead on which Dr. Muawwad had merely checked lines indicating that Darden was restricted from lifting, bending, walking, standing, carrying and sitting, was "untenable" if it meant that Darden was totally physically incapable of doing any of those things and, if it meant something different, was "singularly unhelpful" and "without significant evidentiary value" for purposes of assessing whether Darden could perform any particular job. The ALJ concluded that there was no circumstance that justified Darden's refusal to attend further job development meetings when dates were proposed to her on April 22, 2003 and that Darden had unreasonably failed to cooperate with her Employer's vocational rehabilitation efforts. He ordered a suspension of Darden's workers' compensation commencing after April 22, 2003.

In her appeal to the Board, Darden again argued that her unwillingness to participate in the vocational rehabilitation process was due to her efforts to follow her physician's orders, which, she contended, rendered her failure to cooperate reasonable. The Board agreed with the ALJ that Dr. Muawwad's statements on which Darden relied did not constitute a medical opinion and as such "cannot be afforded any preference usually accorded a treating physician." The Board found that Dr. Muawwad's opinion was "an expert opinion outside the scope of Dr. Muawwad's medical expertise, one more appropriately considered by a vocational rehabilitation expert." The Board noted that Dr. Muawwad's opinion did not "speak to the sedentary types of jobs that the vocational rehabilitation counselor ... locate[d]" for Darden. Referring to the ALJ's detailed recitation of Dr. Muawwad's opinions concerning Darden from May 13, 2002 to April 23, 2003, the Board agreed that the list did not include any indication that Darden's physical capacity had changed on or about April 23, 2003. The Board found that the ALJ's order suspending Darden's benefits based upon unreasonable failure to cooperate with her Employer's vocational rehabilitation efforts was supported by substantial evidence in the record and was in accordance with the law.

The Board rejected Darden's alternative argument that she cured her refusal to participate in the vocational rehabilitation process when her attorney sent her Employer an electronic mail message on August 27, 2003 on Darden's behalf, indicating that Darden was "ready, willing and able to participate in vocational rehabilitation services." The Board acknowledged that a suspension of benefits pursuant to section 32–1507(d) "is only appropriate throughout the period that the injured employee unreasonably refuses to accept vocational rehabilitation" and that "[u]pon demonstration of a willingness to participate in the vocational rehabilitation which [Employer] is obliged to continue to provide, the suspension of benefits must end." The Board noted that both parties referred in their briefs to vocational rehabilitation-related activities that occurred after the formal hearing, but found that "whether [Darden] did demonstrate a willingness to participate to cure any failure to cooperate was not before the ALJ and can only be addressed in a modification of the prior order following disposition of the instant appeal."

## STANDARD OF REVIEW

■ The Board has the responsibility to provide administrative review of compensation orders that formerly was vested in the Office of the DOES Director. *See* 52 D.C. Reg. 11092 (Dec. 23, 2005); *see also* DOES Administrative Policy Issuance No. 05–01 (February 5, 2005). Accordingly,

our earlier case law articulating the standard of review of decisions of the DOES Director governs our review of Board decisions: the Board's decision must stand undisturbed unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* D.C.Code § 2–510(a)(3) (2001); *Clark v. District of Columbia Dep't of Employment Servs.,* 772 A.2d 198, 201 (D.C.2001). As we have done in the past with respect to decisions by the DOES Director, we defer to the Board decision provided that it flows rationally from facts supported by substantial evidence in the record. *See Clark,* 772 A.2d at 201 (citation omitted). Our standard of review mirrors that which the Board itself was bound to apply. *See Canlas v. District of Columbia Dep't of Employment Servs.,* 723 A.2d 1210, 1211 (D.C. 1999). The Board had authority to reverse the ALJ's order only if it was unsupported by substantial evidence or was legally incorrect. *See Gary v. District of Columbia Dep't of Employment Servs.,* 723 A.2d 1205, 1209 (D.C.1998).

## ANALYSIS

The record supports the ALJ's conclusion that nothing in Dr. Muawwad's progress notes indicated that Darden's physical incapacity for work went beyond the limitations recognized in the July 28, 2002 compensation order, *i.e.,* the need to avoid work that is physically strenuous or that requires prolonged standing. In addition, the ALJ correctly recognized that a treating physician's opinion about whether a worker's compensation claimant has the skills for light employment is not a medical opinion and is not entitled to deference or to special weight. Accordingly, we hold that it was neither unreasonable nor contrary to law for the Board to uphold the August 20, 2003 Compensation Order suspending Darden's disability benefits for her unreasonable refusal to participate in vocational rehabilitation.

Darden asks us to find that "her decision to follow her attending physician's instruction cannot, as a matter of law, constitute an unreasonable refusal to participate in the process of vocational rehabilitation services." Petitioner's Brief at 2. Pressed at oral argument to identify where in the record such an instruction could be found, Darden's counsel pointed to a certification from Dr. Muawwad, reflecting his evaluation of Darden on January 27, 2003, on which he filled in a line to state that "[t]his patient is disabled from performing his duties from 1–27–03 to 3–31–03." It is not clear that this document (which the record refers to as a "disability slip") should be read as an instruction not to perform any work, since it refers to unspecified "duties." But even if we were to accept it as an instruction to Darden not to do any work, we would conclude that it does not help Darden's case, because it refers to a time period—January 27 through March 31, 2003—that had expired by the time (April 2003) Darden refused further participation in the vocational rehabilitation process. The record contains no disability slip for any time period after March 31, 2003 (even though, according to testimony by the vocational rehabilitation specialist, he asked both Darden and her attorney for a copy of a "disability slip" from Dr. Muawwad after Darden advised the specialist that she would not meet with him, and Darden's attorney stated that his office would attempt to obtain such a slip and would forward it to the specialist).

 We conclude that, on this record, we need not decide the issue that Darden asks us to resolve—whether a claimant's refusal to accept vocational rehabilitation must be deemed reasonable as a matter of law where the claimant has refused to participate in order to comply with her

treating physician's instruction not to work. There is no record evidence that Dr. Muawwad instructed Darden not to work and likewise no record evidence that Dr. Muawwad warned her that her condition would deteriorate if she performed work of the type that the vocational rehabilitation specialist identified. The record evidence is that, as of April 2003, Dr. Muawwad offered only the opinions that he did "not see how this patient can go to work" and that "she does not have the skills for any light employment." The Board and the ALJ correctly recognized that these statements were non-medical opinions that were unsupported by substantial evidence in the record. We reach the same conclusion about Dr. Muawwad's statement, in his April 23, 2003 progress report, that Darden is "totally and permanently disabled." Whether a claimant is disabled from doing any work is a legal or vocational issue, not a medical issue. *Cf. Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir.2003) (holding that under the Social Security disability laws, a determination that an applicant is disabled or unable to work is a legal conclusion).[3]

Finally, we turn to Darden's argument that she cured her refusal to cooperate. The Board declined to consider this argument, finding that the issue of whether Darden "demonstrate[d] a willingness to participate to cure any failure to cooperate was not before the ALJ" and "cannot be addressed on appeal." We find that this ruling is not supported by substantial evidence in the record and that the Board erred in not realizing that it had discretion to address Darden's cure claim.

An agency fails to base its decision on substantial evidence in the record when it ignores material evidence in the record. *See George Hyman Construction Co. v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 563, 566 (D.C.1985). Here, the Board did not address the fact that, at her hearing before the OHA, Darden stated in response to a question from

---

3. We briefly address two other arguments raised in Darden's brief. First, Darden argues that her Employer unfairly failed, before moving to suspend her benefits, to give her notice that her conduct during April 2003 would be deemed a refusal to cooperate under D.C.Code § 32–1507(d). While we have assumed that a DOES policy generally requiring employers to give such a notice would comport with the Workers' Compensation Act, *see Epstein, Becker and Green v. District of Columbia Dep't of Employment Servs.*, 850 A.2d 1140, 1143 (D.C.2004), we see no reason why such notice should have been required here, where Darden explicitly told the vocational rehabilitation specialist that she would no longer participate in vocational rehabilitation. The facts of this case are unlike those in *Epstein, Becker and Green v. District of Columbia Dep't of Employment Servs.*, 812 A.2d 901 (D.C.2002), where the issue was whether the claimant was entitled to notice that her employer perceived her delay in returning a medical release form to her vocational rehabilitation specialist as a failure to cooperate in vocational rehabilitation.

Second, in a footnote to her brief, Darden suggests that the Board is biased toward affirming OHA Compensation Orders because several Board members were OHA ALJs before being assigned to the Board, and she asks this court to apply heightened scrutiny of the Board's decision. In response, counsel for the Employer advised the court at oral argument that no such bias can be discerned from a review of the Board's decisions. We see no basis for questioning the presumption of regularity that attaches to the actions of Board members as official actions of public officers, *see Eilers v. District of Columbia Bureau of Motor Vehicle Servs.*, 583 A.2d 677, 684 (D.C. 1990), and we specifically reject the suggestion that appellate decisions are rendered suspect by the mere fact that some of the appellate decision-makers were formerly members of the tribunal whose decisions are subject to review. In any event, even if we were to apply the heightened scrutiny that Darden suggests is warranted, we would still find that the Board's decision that Darden unreasonably failed to cooperate with vocational rehabilitation is amply supported by the record.

ALJ Russell that she would cooperate with vocational rehabilitation services if her Employer sought jobs for her comporting with her physical limitations.[4] Darden gave that testimony in response to a specific inquiry by the ALJ (about a point that the ALJ presumably viewed as material). We think it is plain that the point of the inquiry was the issue of cure. *See Byrnes v. Grand Hyatt Washington*, AHD NO. 03–171B, OWC NO. 569630, 2005 DC Wrk. Comp. Lexis 140 (July 21, 2005) (finding that a statement of willingness to cooperate with the employer, made during a hearing pursuant to section 32–1507(d), effected a cure that warranted modification of a compensation order to suspend benefits only through the date of the hearing). The Board ignored substantial evidence in the record in finding that the issue of cure "was not before the ALJ." *Cf. In re A.C.G.*, 894 A.2d 436, 444 (D.C.2006) (issue of guardianship was raised at trial where there was testimony about petitioner's willingness to accept a guardianship).

◼ In focusing on the issue of cure, we are guided by the legislative intent of the District's workers' compensation laws. As we have observed previously, the "purpose of the Workers' Compensation Act is to advance the humanitarian goal to provide compensation to employees for work-related disabilities reasonably expeditiously, *even in arguable cases.*" *WMATA v. District of Columbia Dep't of Employment Servs.*, 827 A.2d 35, 39 (D.C.2003) (citations omitted) (italics added). The Workers' Compensation Act "is to be construed liberally for the benefit of employees and their dependents," *Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 655 (D.C.1987) (citations omitted), and "doubts are to be resolved in favor of the claimant." *Baker v. District of Columbia Dep't of Employment Servs.*, 611 A.2d 548, 550 (D.C.1992).

◼ The Board had discretion in responding to the post-hearing evidence pertaining to cure. Under D.C.Code § 32–1521.01(d)(2), the Board had authority to remand the August 20, 2003 Compensation Order to OHA for further review. Under 7 DCMR § 230 (1986), the Board had authority to grant "leave to adduce additional evidence" and to remand the matter to "permit the presentation of the additional evidence" and for possible modification of the compensation order, as the evidence warranted.[5] In light of the Act's remedial intent "to give substantial protection against interruption of income,"[6] and in light of both parties' reference to post-OHA-hearing activities that bore on the issue of cure, we hold that the Board erred in not considering whether to remand the cure issue to OHA for further proceedings.[7] The Board's statement that the is-

---

4. *See* Hearing Tr. at 73:

> Judge Russell: Ma'am, if Dr. Muawwad gives you certain physical limitations and then the Employer tries to find you a job that matches those specific physical limitations, are you willing to continue with vocational rehabilitation?
> The Witness: Of course I would, yes.

5. Pursuant to DOES Administrative Policy Issuance No. 05–01(Feb. 5, 2005), 7 DCMR §§ 230 remained in effect following amendments to D.C.Code § 32–1522, until a new regulation (7 DCMR § 7–264) was adopted on August 19, 2005. *See* 52 D.C. Reg. 8404 (Sept. 9, 2005) and 52 D.C. Reg. 11092 (Dec. 23, 2005).

6. Report of the Committee on Housing and Economic Development, Council of the District of Columbia, on Bill 8–74, the *District of Columbia Workers' Compensation Equity Amendment Act of 1989* at 4 (July 6, 1990).

7. We note that the ALJ, too, had authority to continue the hearing and to hold the record open for the development of additional evidence on the issue of cure. *See* 7 DCMR

sue of cure could "only be addressed in a modification of the prior order following the disposition of the instant appeal" was incorrect as a matter of law. Because this court is "not obliged to stand aside and affirm an administrative determination which reflects a misconception of the relevant law," *Jones v. District of Columbia Dep't of Employment Servs.*, 553 A.2d at 647 (internal citations omitted), we reverse this aspect of the Board's decision.

We therefore affirm the Board's decision so far as it sustains the ALJ's determination that petitioner unreasonably refused to participate in vocational rehabilitation as from April 22, 2003, but remand the matter for further proceedings, consistent with this opinion, on the issue of whether petitioner cured her refusal to cooperate.

*So ordered.*

§ 223.4; *see also Jones v. District of Columbia Dep't of Employment Servs.*, 553 A.2d 645 (D.C.1989) (holding that provision of D.C.Code specifying that "no additional information may be submitted by the claimant or other interested parties after the date of the hearing, except under unusual circumstances" (currently, D.C.Code § 32–1520) must be construed in light of DOES regulation (7 DCMR § 223.4) that permits adjournment of the hearing to develop additional evidence).