*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-AA-0699

HOWARD UNIVERSITY HOSPITAL, *et al.*, PETITIONERS,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

DENNIS NEAL, SR., INTERVENOR.

On Petition for Review of an Order of the
District of Columbia Department of Employment Services
Compensation Review Board
(2023-CRB-000016)

(Hon. Linda F. Jory, Administrative Law Judge)

(Submitted Sept. 24, 2024                    Decided January 10, 2025)

*Sheryl A. Tirocchi* and *Matthew E. Fioravante* were on the brief for petitioners.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Carl J. Schifferle*, Deputy Solicitor General, filed a Statement in Lieu of Brief for respondent.

*Charles Krikawa* was on the brief for intervenor.

Before BECKWITH, EASTERLY, and DEAHL, *Associate Judges*.

BECKWITH, *Associate Judge*:  After falling from a ladder and injuring himself on the job, Dennis Neal began receiving disability benefits from his employer, Howard University Hospital.  The hospital terminated those benefits once Mr. Neal accepted new employment.  After four days of training at the new job, however, Mr. Neal quit and sought the reinstatement of his benefits and rehabilitation services.  An Administrative Law Judge (ALJ) granted the claim, and the Compensation Review Board (CRB) affirmed.  The hospital now appeals to this court, arguing that the CRB lacked substantial evidence to find that Mr. Neal did not voluntarily limit his income and did not fail to cooperate with vocational rehabilitation.  Specifically, the hospital argues that the ALJ and CRB ignored critical testimony from both witnesses at the hearing.  Because the CRB's decision was supported by substantial evidence, we affirm.

## I. Background

While working as a heating, ventilation, and air conditioning technician for Howard University Hospital, Mr. Neal was injured when a ladder gave way beneath him.  He testified that shortly after the fall, he began experiencing tingling and pain in his neck and arms, went to the emergency room, and a few months later, underwent spinal surgery.  Six months after recovering from the surgery, Mr. Neal attempted to return to work, but because he felt spasms in his neck and arms, he quit

and has not resumed working for the hospital since.

Since the accident, Mr. Neal has visited several physicians, whose reports were received by the ALJ as exhibits. One doctor commented that Mr. Neal's claims of pain "ma[de] no physiologic sense whatsoever" and were "a markedly embellished and exaggerated presentation," whereas another doctor's more recent functional capacity evaluation (FCE) of Mr. Neal stated that Mr. Neal's "subjective complaints correlated with the objective findings" and were "reliable and accurate." The FCE concluded that although "Mr. Neal did not demonstrate the functional abilities to return to work in his pre-injury position," he should be capable of light-duty work for eight hours a day.

According to the exhibits and testimony presented by the hospital to the ALJ, over the course of a year, Mr. Neal met regularly with his vocational rehabilitation counselor, Ms. Mason, participated in a four-hour "Job Club" workshop, applied to numerous job openings, and attended several job interviews. Eventually, Mr. Neal accepted a position with McCrea Heating and Air Conditioning, at which point the hospital discontinued Mr. Neal's disability benefits. Mr. Neal testified that he was told during his interview for the position that it would be located in the Temple Hills area close to Mr. Neal's home and would require only "warranty work" as opposed to "regular service work." Warranty work, according to Mr. Neal, entails performing

inspections and recording whether repairs are needed, whereas service work is more physical and involves lifting and replacing heavy pieces of equipment.

Mr. Neal testified that, upon starting work, he learned that the person who was supposed to train him in the Temple Hills area was unavailable, so he was instead paired with someone farther away and had to drive for "three hours a day, if not more," to reach the job sites. Mr. Neal testified that, from what he observed, he was being trained for service work. He also stated that McCrea management did not tell him how long the training would last; rather, "they told me . . . they [were] waiting for my truck to be ready for me . . . and when [it] came in, then they would put me on my truck, and I would go do the warranty work." When asked if he knew how long he would be driving the more distant route, Mr. Neal said, "I was told I would be waiting until my truck got ready."

Mr. Neal testified that these long drives caused a "tingling sensation" and "aggravation of the nerves in [his] neck and back," so after four days he sought treatment from Dr. James Clyne. The ALJ credited Dr. Clyne's assessment that Mr. Neal still had "persistent lingering effects [from his workplace injury] to the neck and low back that limit[ed] his ability to perform his work duties effectively" and that "[h]is physical work and need to drive long distances [were] likely to worsen his symptoms." After seeing his doctor, Mr. Neal told his supervisor at McCrea that

he would no longer work there.

Mr. Neal testified that he is "interested in trying to find a job" "because [he is] going stir crazy in this house" and that he is "amenable to returning to working with a vocational counselor." Meanwhile, Ms. Mason, the hospital's sole witness at the hearing, testified to her opinion that Mr. Neal had not given "a good faith effort to work this job."

After the hearing on these matters, the ALJ ordered the hospital to reinstate temporary total disability benefits and restore vocational rehabilitation services, but the CRB vacated the order and remanded for the ALJ to make additional factual and legal findings. On remand, the ALJ found that "[a]lthough the job offered with McCrea in the warranty position was commensurate with [Mr. Neal's] physical limitations and abilities, the work [he] was actually required to perform during the training period was not." And it found that Mr. Neal had "demonstrated his willingness to cooperate with vocational rehabilitation services after he quit McCrea." The ALJ again ordered the hospital to reinstate Mr. Neal's benefits and services, and this time the CRB affirmed. Specifically, the CRB stated that the hospital "d[id] not provide any evidentiary support" for its contentions that the McCrea job was in fact commensurate with Mr. Neal's physical abilities and that Mr. Neal quit despite having been given a timeline for the switch to warranty work,

and the CRB agreed with the ALJ that Mr. Neal's vocational "efforts were clearly impacted by the increased pain caused by his work duties."

## II. Analysis

We review a decision of the Compensation Review Board to determine if it "flows rationally from the facts, and those facts are supported by substantial evidence on the record." *Clark v. D.C. Dep't of Emp. Servs.*, 772 A.2d 198, 201 (D.C. 2001). This standard of review "mirrors that which the Board is bound to apply" to the ALJ's decision. *Marriott at Wardman Park v. D.C. Dep't of Emp. Servs.*, 85 A.3d 1272, 1276 (D.C. 2014). Like the Board, we cannot "ignore[] material evidence in the record," but "[i]f substantial evidence exists to support the hearing examiner's findings, the existence of substantial evidence to the contrary does not permit [us] to substitute [our] judgment for that of the examiner." *Darden v. D.C. Dep't of Emp. Servs.*, 911 A.2d 410, 416 (D.C. 2006); *Marriott Int'l v. D.C. Dep't of Emp. Servs.*, 834 A.2d 882, 885, 887 (D.C. 2003) (stating that, in reviewing for substantial evidence, the Board incorrectly "emphasize[d] a different set of facts in the record" and was "not at liberty to substitute judgments based on [its] favored competing body of substantial evidence"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and must be "more than a mere scintilla." *Hill v. D.C. Dep't of Emp. Servs.*, 272

A.3d 274, 278 (D.C. 2020) (quoting *Rodriguez v. Filene's Basement, Inc.*, 905 A.2d 177, 181 (D.C. 2006)).

On appeal, the hospital argues that the CRB ignored and misstated evidence related to the hospital's two main defenses: that Mr. Neal voluntarily limited his income and that he unreasonably refused vocational rehabilitation services. We consider each defense in turn.

Under the Workers' Compensation Act, compensation can be reduced "[i]f the employee voluntarily limits his income or fails to accept employment commensurate with his abilities." D.C. Code § 32-1508(5). The hospital contends that there was insufficient evidence to support a finding that the McCrea job was not commensurate with Mr. Neal's abilities and that the ALJ and the CRB concluded otherwise because they ignored Mr. Neal's testimony that the long drives—rather than the duties on the job—were the only source of Mr. Neal's physical discomfort. According to the hospital's reading of the record, Mr. Neal was also aware that any incommensurate job requirements would end when his truck became available and he began to work closer to his home.

To the extent the hospital argues that the commute should not have been considered when determining whether the job was outside his capabilities, we find that argument unconvincing. To prove a claimant has voluntarily limited his income,

the employer must demonstrate the availability of suitable jobs that the employee has foregone, and geographic location is a critical part of this analysis. *Providence Hosp. v. D.C. Dep't of Emp. Servs.*, 163 A.3d 115, 119, 121 (D.C. 2017) (defining the job availability assessment as whether "there are jobs reasonably available in the community for which the [claimant] is able to compete"); *see Joyner v. D.C. Dep't of Emp. Servs.*, 502 A.2d 1027, 1030 n.3 (D.C. 1986) (stating that, in the case of a claimant who voluntarily relocates, the agency may consider the extent to which financial or health reasons necessitated the relocation when determining whether the claimant voluntarily limited her income); *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 521 (Iowa 2012) (interpreting *Joyner* to "stand for the broader proposition that geographic location may be considered in determining whether the availability of employment cuts off statutory workers' compensation benefits"). Here, the ALJ's finding that the McCrea job was not commensurate with Mr. Neal's abilities was supported by the FCE's determination that Mr. Neal would suffer "demonstrated deficits" when "sitting for extended periods" and by the worsening of Mr. Neal's symptoms after starting at McCrea, which his treating physician attributed to the "need to drive long distances" for the job. Mr. Neal did, therefore, present substantial evidence that the McCrea job was not commensurate with his abilities because it required a long commute that exacerbated his symptoms.

The hospital's argument also independently fails because it ignores the

substantial evidence demonstrating that Mr. Neal's duties at the job sites were also not commensurate with his abilities. Mr. Neal was promised a position for warranty work, yet he was being trained for service work—which could involve climbing ladders and lifting equipment that weighed more than 40 pounds. The conclusion that Mr. Neal's job duties were going to involve service work "flows rationally from the fact[]" that he was being trained for service work; indeed, it would be illogical for an employer to train an employee for tasks that he is not expected to encounter in his job. *Clark*, 772 A.2d at 201. And as the CRB noted, the hospital presented no witnesses or exhibits contradicting Mr. Neal's testimony about McCrea—Ms. Mason even conceded that she had not herself assessed what the position entailed—so the record is undisputed on these points.

The hospital next asserts that the CRB did not adequately consider that Mr. Neal quit after only four days of training despite knowing that the longer drives and the service work duties would last only as long as the training. The hospital cites no authority to support its implied proposition that Mr. Neal's four-day attempt at the McCrea job was too short or that he should have finished training, as Ms. Mason testified—or indeed, that a claimant is ever required to remain at a job that is incommensurate with his abilities for any specific period. Even accepting that unsupported legal proposition as true, the hospital did not present any witnesses from McCrea to testify that the employer would keep its word as to the original job

description or that Mr. Neal's job would eventually become commensurate with his abilities. Instead, as discussed above, the evidence in the record indicates that McCrea was training Mr. Neal for service work, and it is reasonable to assume McCrea was training Mr. Neal for the work he would be performing in his job. Although Mr. Neal was told by McCrea that he would be on the longer driving route "until [his] truck got ready," there was no indication as to how long that would take, and when Mr. Neal quit McCrea, the supervisor made no effort to reassure Mr. Neal that he would eventually get the promised warranty work or the shorter routes. There was, therefore, evidence that "a reasonable mind might accept as adequate to support" the ALJ's conclusions that the McCrea job was not commensurate with Mr. Neal's physical limitations, that Mr. Neal did not have a concrete training timeline, and that Mr. Neal did not know that he would revert to warranty work in his geographic area once training was over. *Hill*, 272 A.3d at 278.

The hospital's second defense is that Mr. Neal failed to cooperate with vocational rehabilitation services. The D.C. Code requires that an employer provide such services to a disabled employee unless "the employee unreasonably refuses . . . to accept vocational rehabilitation," in which case the services may be suspended "until such time as the employee begins to cooperate or manifests a willingness to do so." D.C. Code § 32-1507(a), (d); *Brown v. D.C. Dep't of Emp. Servs.*, 83 A.3d 739, 749-50 (D.C. 2014). The ALJ determined that Mr. Neal had been "fully

cooperative with vocational rehabilitation services throughout the process," but the hospital contends that the ALJ ignored the undisputed fact that Mr. Neal failed to consult Ms. Mason or his boss about alternatives or accommodations before quitting his job. It argues that this failure is not "consistent with the actions of a person who is making an effort to make the vocational process work."

The hospital's argument is unpersuasive. Substantial evidence exists to support that Mr. Neal never "unreasonably refuse[d]" to cooperate with vocational rehabilitation in the first place. D.C. Code § 32-1507(d). The ALJ found—based on an uncontradicted record—that prior to the McCrea job, Mr. Neal met with Ms. Mason weekly, applied for jobs, and "listened attentively and positively contributed" at the Job Club.[1] After eleven months of active participation in vocational rehabilitation, Mr. Neal found the McCrea job. Nothing about his departure from that job suggests that he unreasonably refused to cooperate with rehabilitation requirements: He told his boss the reasons for his departure, and his boss did not offer to switch him back to the warranty track.

Besides, vocational services must resume when the employee "begins to

---

[1] This behavior differs from what this court has found to be noncooperative in other cases. *See, e.g.*, *Black v. D.C. Dep't of Emp. Servs.*, 801 A.2d 983, 985 (D.C. 2002) (finding substantial evidence of a failure to cooperate where the employee missed an appointment and thereafter refused to participate in the Job Club or meet with his vocational counselor, despite her voicemails and letters).

cooperate or manifests a willingness to do so." *Brown*, 83 A.3d at 749-50. Once again, we find no statutory or judicial mandate that an employee consult with their vocational rehabilitation counselor prior to deciding to terminate their employment, and as the ALJ observed, Mr. Neal updated Ms. Mason shortly after quitting, which she found signified his willingness to continue engaging in the process. Mr. Neal also testified about his desire to find new employment and his interest in working with a counselor again, which the ALJ found credible based on Mr. Neal's "demeanor" when testifying and the "consistency of [his] statements on direct and cross-examination and with the record evidence."[2] Based on this record, the ALJ's determination that Mr. Neal did not unreasonably refuse to cooperate with vocational rehabilitation was supported by substantial evidence.

---

[2] The hospital highlighted Ms. Mason's testimony that Mr. Neal did not "make a good faith effort to work" the McCrea job, but the ALJ considered and discounted this, finding Ms. Mason credible but noting that she had been unable to contact anyone at McCrea or assess if the job was an appropriate placement. The ALJ determined that Dr. Clyne's medical opinion about the job's impact on Mr. Neal's well-being was "more persuasive" than Ms. Mason's perception. Weighing the evidence in this manner was within the ALJ's purview as factfinder. *See Dorchester Assocs. LLC v. D.C. Bd. of Zoning Adjustment*, 976 A.2d 200, 215 (D.C. 2009) ("[A]n agency as a finder of fact[] may credit the evidence upon which it relies to the detriment of conflicting evidence . . . ." (quoting *Morrison v. D.C. Dep't of Emp. Servs.*, 834 A.2d 890, 896 (D.C. 2003))). And considering the other evidence of Mr. Neal's participation, *see supra*, the persuasiveness of Ms. Mason's testimony was significantly undermined, and the ALJ's conclusion therefore "flows rationally" from those facts in the record. *Clark*, 772 A.2d at 201.

### III. Conclusion

The hospital essentially urges us to consider its "favored competing body" of facts—that Mr. Neal did not tell his boss or his counselor about his physical difficulties before quitting. *Marriott Int'l*, 834 A.2d at 887. But the existence of those facts, even if they do rise to the level of substantial evidence, does not mean that the ALJ, or the CRB in affirming, lacked substantial evidence for its own determinations. We as a reviewing court are "not at liberty to substitute [our] judgments" for the agency's. *Id.* The CRB's decision was supported by substantial evidence in the record that Mr. Neal did not voluntarily limit his income and did not fail to cooperate with vocational rehabilitation. For the foregoing reasons, we affirm the decision of the CRB.

*So ordered.*